[Civ. No. 20945. Fourth Dist., Div. Two. Jan. 9, 1981.]

JESUS CASTRO, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Appellant.

506

COUNSEL

Herbert Hafif, Wayne J. Austero and Stephen L. Odgers for Plaintiff and Appellant.

Chase, Rotchford, Drukker & Bogust and E. Michael Kaiser for Defendant and Appellant.

OPINION

**TAMURA, Acting P. J.**—This appeal involves the peculiar risk exception to the general immunity of an employer for the torts of its independent contractor. Plaintiff, a dump truck driver, was an employee of a construction company engaged by the State of California to install a pipeline to transport Feather River water across the City of Riverside to a reservoir in Perris. Plaintiff sued the state (defendant) for damages for injuries he sustained when a fellow employee backed his truck into him. Trial resulted in a plaintiff's jury verdict but the court granted defendant's motion for judgment notwithstanding the verdict. Plaintiff appeals from the judgment in favor of defendant notwithstanding the verdict and defendant cross-appeals from the judgment for plaintiff on the jury verdict.

On both appeals, plaintiff is entitled to the benefit of every favorable inference which may reasonably be drawn from the evidence and to have all conflicts in the evidence resolved in his favor. (*Aceves v. Regal Pale Brewing Co.* (1979) 24 Cal.3d 502, 507 [156 Cal.Rptr. 41, 595 P.2d 619]; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479]; *Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925-926 [101 Cal.Rptr. 568, 496 P.2d 480].) The evidence will be reviewed accordingly.

Sully-Miller Construction Company had contracted with the state to lay the pipeline. At the time of the accident, work was progressing southerly on Watkins Drive, a north-south street, in the City of Riverside. The street was approximately 60 feet wide and sloped downward southerly. The pipe was 10 feet in diameter and was being set in a trench approximately 20 feet wide and 24 feet deep within the street right-of-way and adjacent to the westerly curb line. The trench and the equipment took up most of the entire width of the street.

Basically the work involved the following steps: A diesel powered track backhoe made the excavation for the trench; the dirt removed by the backhoe was loaded onto dump trucks and hauled to other areas; a diesel powered crane lifted sections of the pipe and set them into the trench; after the pipe was set, the trench was backfilled and packed with tampers.

Six to seven dump trucks, all owned or leased by the drivers, were used to haul the dirt away. All of the drivers, including plaintiff, were employees of Sully-Miller Construction Company. Plaintiff's truck which was similar to the others was a 10 wheeler with a dump box having a capacity of 10 square yards; it was 8 feet wide with an overall length of 25 feet; the cab was 7 or 8 feet high and the top of the bed was approximately 15 feet high; there was an extension mirror on each side of the cab and a rear view mirror within the cab; vision from the inside mirror was totally obscured by the dump box.

In order to avoid having the trucks back uphill after being loaded, the construction procedure for the project included a plan calling for the truckers to drive their empty trucks north on Watkins beyond the construction site to a driveway or cross street, turn the vehicles around and back down the street to the backhoe for loading. In lining up for loading, the trucks were to maintain a space of 25 feet. After the trucks were loaded, they were to be driven north on Watkins to unloading areas. At the time of the accident, the trucks had to back up a distance of about a half a block to reach the backhoe.

Plaintiff had backed his truck down Watkins Drive into a position fourth in line for loading. While backing down, he noticed that his motor was sputtering, so after he stopped in line he got out to check a new bolt he had put on the battery cable of his truck. He opened the hood, climbed onto the front bumper and was checking the battery cable when he was struck by a backing truck operated by coemployee Brake.

Brake had backed down Watkins a distance of more than half a block; he did not see plaintiff in either of his side mirrors; the mirrors provided just a glimpse of the edge of Castro's truck; at a distance of 85 feet or less, he was unable to see what was directly behind him. Plaintiff did not see Brake's truck nor did he hear its backup bell. The trucks in line had their motors running; the diesel powered backhoe, a large air compressor and boiler, bulldozers and other heavy equipment in the

area were in operation. According to plaintiff, the noise from the equipment drowned out the backup bell.

There was evidence that the truck drivers had been told to remain in their vehicles while waiting in line, not as a safety precaution, but to avoid work delays. The truckers paid little or no attention to the admonition; they commonly got out of their trucks to stretch their legs or to smoke. Defendant adduced testimony that truckers were told to get out of the line to make repairs when they encountered engine trouble. Plaintiff testified he had never been so told.

Plaintiff stated that on other similar jobs where he had worked there were "spotters" or "flagmen" who directed the truck drivers in backing up their vehicles. Plaintiff's expert, a former state inspector, testified it was normal and customary to have "spotters" or "flagmen" when the job required trucks to back up and that in his opinion "flagmen" or "spotters" should have been provided on the instant job because of truck drivers' limited visibility to the rear and the difficulty in hearing backup bells above the noise from the heavy equipment working in the area.

The jury returned a verdict in plaintiff's favor and assessed his damages at $240,000 but found that he was 45 percent negligent. The jury also returned a special verdict in which it answered "Yes," to the following question: "Should the defendant, STATE OF CALIFORNIA, have recognized that the work done by plaintiff's employer, Sully-Miller Construction Company, would create a peculiar risk of harm without special precautions?" Judgment on the jury verdict was entered in plaintiff's favor for $132,000.

I

### PLAINTIFF'S APPEAL

Plaintiff contends that the court erred in granting defendant's motion for judgment notwithstanding the verdict on the basis that the evidence was insufficient as a matter of law to support the jury finding of liability on the peculiar risk theory. As we explain below, we agree with plaintiff's position.

(a) *The Peculiar Risk Doctrine:*

The general rule is that an employer of an independent contractor is not liable for the negligence of the contractor or its employees but the

exceptions to the rule have become so numerous that it has been said that the rule is "general" only in the sense that it is applied where no good reason is found for departing from it. (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 252 [66 Cal.Rptr. 20, 437 P.2d 508].) The principal considerations which have led to the gradual departure from the rule of nonliability are that the employer is the one who benefits from the work; the employer being the one who selects the contractor has the ability to select the one who is most competent and financially responsible; the employer is the one in a position to demand indemnity; the insurance to distribute the loss is a proper cost of the employer's business; and the performance of duty of care is one of great public importance. (*Aceves* v. *Regal Pale Brewing Co., supra*, 24 Cal.3d 502, 508; *Widman* v. *Rossmoor Sanitation, Inc.*, 19 Cal.App.3d 734, 747 [97 Cal.Rptr. 52].)

One of the exceptions to the nonliability of an employer for the torts of its independent contractor is known as the peculiar risk doctrine.[1] California has adopted the doctrine as expressed in sections 413 and 416 of the Restatement Second of the Law of Torts (hereafter Restatement). (*Aceves* v. *Regal Pale Brewing Co., supra*, 24 Cal.3d 502, 508-509; *Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 585 [153 Cal.Rptr. 213, 591 P.2d 503].) Section 416 states: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." Section 413 imposes direct liability on the employer when he has made no provisions in the contract or otherwise for the taking of required precautions.

The doctrine relates to "special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions. . . . 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself." (Rest., § 413, com. b.) "It is not essential that the peculiar risk be one which will necessarily and in-

[1]Our Supreme Court has suggested that a more appropriate term might be "special risk." (*Aceves* v. *Regal Pale Brewing Co., supra*, 24 Cal.3d 502, 509, fn. 2.)

evitably arise in the course of the work, no matter how it is done. It is sufficient that it is a risk which the employer should recognize as likely to arise in the course of the ordinary and usual method of doing the work, or the particular method which the employer knows that the contractor will adopt." (Rest., § 416, com. (e).)

The doctrine can perhaps be best explained by examples of the types of risks which have been found to come within its scope. The following were collected and summarized in *Griesel* v. *Dart Industries, Inc., supra*, 23 Cal.3d 578, at page 586: "[T]he risk of being struck by an automobile while eradicating traffic lines on a busy street (*Van Arsdale* v. *Hollinger, supra*, 68 Cal.2d at p. 254), the risk of being run over by dump trucks backing up during road construction work (*Anderson* v. *L.C. Smith Constr. Co.* (1969) 276 Cal.App.2d 436, 445-446 [81 Cal. Rptr. 73]), the risk of explosion while painting the inside of a tank with a volatile paint (*Woolen* v. *Aerojet General Corp., supra*, 57 Cal.2d at p. 410 [20 Cal.Rptr. 12, 369 P.2d 708]; *McDonald* v. *City of Oakland* (1965) 233 Cal.App.2d 672, 677-678 [43 Cal.Rptr. 799]), the risk of falling while working on a 10-foot high wall (*Morehouse* v. *Taubman* (1970) 5 Cal.App.3d 548, 557-558 [85 Cal.Rptr. 308]), or on a 20-foot high bridge (*Fonseca* v. *County of Orange* (1972) 28 Cal.App.3d 361, 365-366 [104 Cal.Rptr. 566]), the risk of electrocution while operating a crane near high voltage wires during bridge construction work (*Walker* v. *Capistrano Saddle Club* (1970) 12 Cal.App.3d 894, 900 [90 Cal. Rptr. 912]), and the risk of a cave-in while working in a 14-foot deep trench (*Widman* v. *Rossmoor Sanitation, Inc.* (1971) 19 Cal.App.3d 734, 744-747 [97 Cal.Rptr. 52])."

■ Whether the particular work which the independent contractor has been hired to perform is likely to create a peculiar risk of harm to others unless special precautions are taken is ordinarily a question of fact. (*Ferrel* v. *Safway Steel Scaffolds* (1962) 57 Cal.2d 651, 656 [21 Cal.Rptr. 575, 371 P.2d 311]; *Mackey* v. *Campbell Construction Co.* (1980) 101 Cal.App.3d 774, 785 [161 Cal.Rptr. 64]; *Walker* v. *Capistrano Saddle Club* (1970) 12 Cal.App.3d 894, 899 [90 Cal.Rptr. 912].) In the case at bench, the trial court instructed the jury on the peculiar risk doctrine as set forth in section 416 of the Restatement and submitted a special verdict form for a finding as to whether the state should have recognized that the work done by Sully-Miller Construction Company would create a peculiar risk of harm without special precautions. The jury returned a special finding in favor of the plaintiff on the pecu-

liar risk theory of liability but the court granted the state's motion for judgment notwithstanding the verdict. The question before us is the propriety of the order.

(b) *Propriety of the Order Granting Motion for Judgment Notwithstanding the Verdict*:

■ The rules circumscribing the power of a trial judge to grant a motion for judgment notwithstanding the verdict are well established. The power to grant such a motion is identical to the power to grant a directed verdict; the judge cannot weigh the evidence or assess the credibility of witnesses; if the evidence is conflicting or if several reasonable inferences may be drawn, the motion should be denied; the motion may be granted ""'only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict.'"" (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 877-878 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Brandenburg* v. *Pac. Gas & Elec. Co.* (1946) 28 Cal.2d 282, 284 [169 P.2d 909], quoting *Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 110-111 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282].)

■ Viewing the evidence in accordance with the foregoing principles, there was ample evidence to support the jury's finding that the state should have recognized that the work Sully-Miller Construction Company was hired to do would be likely to create during its progress a peculiar risk of harm to others, including Sully-Miller employees, unless special precautions were taken.

Construction procedures on the project included a plan calling for the dump trucks to proceed to a point north of the construction site, turn around at an intersection or driveway, and back down for a distance of a half a block or more to the backhoe for loading. This plan was adopted in advance of actual construction and was known to the state's safety inspectors on the job whose responsibilities included approval of the contractor's safety plan. There was evidence that the mirrors mounted on the sides of the truck cabs did not enable drivers to see what was directly behind them at distances of 85 feet or less. The trucks were equipped with backup bells, but there was evidence from which it could be inferred that the bells could not be heard above the din of engine noises from the trucks and heavy equipment in the area. Although a representative of the contractor testified that it was the custom and

practice of the company to advise drivers to remain in the trucks when in line, this was conceded to be an efficiency measure to avoid work delays and not a safety precaution. Drivers paid little or no attention to the policy; it was common for drivers to get out of their trucks to stretch their legs or to smoke. The contractor's representative also testified that it was the custom and practice of the company to tell the truck drivers not to work on their vehicles while in line but plaintiff said he never heard of the policy. Plaintiff's expert testified it was customary in like situations to have "flagmen" or "spotters" to assist truck drivers in backing up their vehicles and that in his opinion such assistance should have been provided on the job in question. The chief state inspector on the job conceded that he had the authority to require "flagmen" on the job if he determined it to be necessary.

The foregoing evidence was sufficient to support the jury's finding of liability under the peculiar risk doctrine. There was substantial evidence that the state should have recognized that the risk of someone being struck by dump trucks backing up for more than half a block was inherent in the approved plan of operation unless special precautions were taken. While the evidence was conflicting in many respects, the very existence of the conflict rendered it inappropriate for the court to grant the motion for judgment notwithstanding the verdict. (See *Ferrel v. Safway Steel Scaffolds, supra,* 57 Cal.2d 651, 656; *McCown v. Spencer* (1970) 8 Cal.App.3d 216, 226 [87 Cal.Rptr. 213]; *Robinson v. North American Life & Cas. Co.* (1963) 215 Cal.App.2d 111, 118 [30 Cal.Rptr. 57].) In attempting to uphold the trial court's action, defendant cites evidence favorable to it and ignores evidence and inferences favorable to plaintiff. ■ In order to uphold an order granting a motion for judgment notwithstanding the verdict, it must be shown that, viewing the evidence in the light most favorable to the party who received the verdict, there was no substantial evidence to support the verdict. (*Brandenburg v. Pac. Gas & Elec. Co., supra,* 28 Cal.2d 282, 284.)

Defendant argues that the peculiar risk doctrine should be narrowly interpreted when the injured party is an employee of the independent contractor, citing *LaCount v. Hensel Phelps Constr. Co.* (1978) 79 Cal.App.3d 754, 766-767 [145 Cal.Rptr. 244]; *Elder v. Pacific Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650, 659 [136 Cal.Rptr. 203]; *Anderson v. Chancellor Western Oil Dev. Corp.* (1975) 53 Cal.App.3d 235, 240-243 [125 Cal.Rptr. 640]. In *Anderson* and *Elder,* the reviewing court held that under the particular facts and circumstances there shown, the

peculiar risk doctrine was inapplicable as a matter of law. The *Anderson* court observed that where the injured person was the employee of the independent contractor there was a "strong public and legal policy" favoring the exclusivity of the workers' compensation remedy and that therefore in such situations the peculiar risk doctrine should be strictly construed. (53 Cal.App.3d 235, 243.) *Elder* cited *Anderson* for the proposition that the peculiar risk concept must be strictly interpreted where the injured party is an employee of an independent contractor. (66 Cal.App.3d 650, 659.) *LaCount* noted the principle of strict interpretation expressed in *Anderson* and *Elder* but said: "Although *Anderson* and *Elder* stand for the proposition that the concept of peculiar risk is strictly interpreted when an employee of the independent contractor is the injured party, these cases do not stand for the proposition that every time an employee is injured the peculiar risk doctrine is inapplicable." (79 Cal.App.3d 754, 769.) As we explained above, in the case at bench, the issue was properly left to the jury.

In any event, as a matter of public policy, we see no justification for a strict interpretation of the peculiar risk doctrine just because the injured person is the employee of the independent contractor rather than a third person. The workers' compensation law preserves an employee's right to obtain redress for injuries caused by the negligence of third persons who are not in an employment relationship with him. (Lab. Code, § 3852.) It does not alter the correlative rights and liabilities of parties who do not occupy the required statuses of employer and employee. (*Marsh* v. *Tilley Steel Co.* (1980) 26 Cal.3d 486, 495 [162 Cal.Rptr. 320, 606 P.2d 355]; *Baugh* v. *Rogers* (1944) 24 Cal.2d 200, 214 [148 P.2d 633, 152 A.L.R. 1043]; *Campbell* v. *Harris-Seybold Press Co.* (1977) 73 Cal.App.3d 786, 790 [141 Cal.Rptr. 55].) As the examples of the application of the peculiar risk doctrine collected in *Grisel* v. *Dart Industries, Inc., supra*, 23 Cal.3d 578, 586, reveal, the doctrine finds its most common application when the injured party is an employee of the independent contractor. Our high court has declared time and again that an employee of an independent contractor comes within the word "others" as used in Restatement sections 413 and 416 and may sue the contractor's employer under the peculiar risk doctrine. (*Aceves* v. *Regal Pale Brewing, Co., supra*, 24 Cal.3d 502, 509, fn. 1; *Van Arsdale* v. *Hollinger, supra*, 68 Cal.2d 245, 254; *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407, 410-411 [20 Cal.Rptr. 12, 369 P.2d 408].) The Supreme Court has never suggested that the doctrine must be strictly interpreted when the injured party is an employee of the independent contractor. Indeed, as Justice Kerrigan observed in this

court's opinion in *Widman v. Rossmoor Sanitation, Inc., supra*, 19 Cal.App.3d 734, 747, an action by an injured employee of an independent contractor against a land developer who contracted for the services of the independent contractor: "It is common knowledge that workmen injured or killed in construction work do not receive full compensation under the Workmen's Compensation Act for damages that they sustain, notwithstanding the commendable purpose of such legislation. Consequently, a portion of said damages should be allocated to the land developer." In the instant case, the state officials, engineers and inspectors, unlike the proverbial widow who hires an independent contractor to build a house, were involved in the construction of the huge Feather River Water Project. They were knowledgeable persons and were reasonably chargeable with awareness of the special risk involved in having dump trucks back up for a long distance at a construction site.

■ Defendant contends that it could not be liable under the peculiar risk theory because plaintiff's injuries were caused by the "collateral" negligence of the employee who backed his truck into plaintiff. The distinction between "collateral" or "casual" negligence and negligence which will render the employer liable has been described as "a shadowy one at best." (*Van Arsdale v. Hollinger, supra*, 68 Cal.2d 245, 252, quoting Harper, Law of Torts (1933) § 292.) Our high court recently explained the distinction in the following terms: "Liability under the peculiar risk doctrine does not extend to so-called 'collateral' or 'casual' negligence on the part of the contractor or his employees. (*Van Arsdale v. Hollinger, supra*, 68 Cal.2d at p. 252.) 'Casual' or 'collateral' negligence has sometimes been described as negligence in the operative detail of the work, as distinguished from the general plan or method to be followed. Although this distinction can frequently be made, since negligence in the operative details will often not be within the contemplation of the employer when the contract is made, the distinction is not essentially one between operative detail and general method. 'It is rather one of negligence which is unusual or abnormal, or foreign to the normal or contemplated risks of doing the work, as distinguished from negligence which creates only the normal or contemplated risk.' (Rest.2d Torts, § 426, com. a; see Prosser, Law of Torts, 4th ed. (1971) pp. 474-475.)" (*Aceves v. Regal Pale Brewing Co., supra*, 24 Cal.3d 502, 510.)

Evidence in the case at bench supports the finding that plaintiff's injuries resulted from negligence which creates only the normal or contemplated risk of harm to others. The negligence which occasioned

plaintiff's injuries was neither "unusual [n]or abnormal, [n]or foreign to the normal or contemplated risks of doing the work." (*Id.*) In *Anderson v. L.C. Smith Constr. Co.* (1969) 276 Cal.App.2d 436, 445-446 [81 Cal.Rptr. 73], the court held that a construction procedure calling for trucks to back up to dump asphalt on a paver involved a peculiar risk of harm. Although the truck in *Anderson* was not equipped with a backup bell whereas the truck which struck the plaintiff was so equipped, the distinction is not critical. In the present case, there was substantial evidence that the noise from the heavy equipment and trucks in the area rendered the backup bells inaudible. There was substantial evidence that the injuries resulted from a recognizable risk inherent in the work procedures adopted for the project and not from "collateral" or "casual" negligence of the contractor or its employees.

Defendant cites a number of cases where the peculiar risk doctrine has been held inapplicable. As the court in *Mackey v. Campbell Construction Co., supra,* 101 Cal.App.3d 774, said of those cases: "We have examined the cases cited by defendants which have held the 'peculiar risk of harm' doctrine inapplicable. Each has turned on the court's conclusion that the risk was an ordinary one or one not related to any risk inherent in the particular work being performed. (See, e.g., *Addison v. Susanville Lumber, Inc.* (1975) 47 Cal.App.3d 394 [120 Cal. Rptr. 737]; *Elder v. Pac. Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650 [136 Cal.Rptr. 203]; *Holman v. State of California, supra,* 53 Cal. App.3d 317 [124 Cal.Rptr. 773]; see also *Stark v. Weeks Real Estate, supra,* 94 Cal.App.3d 965 [156 Cal.Rptr. 701].)" (*Mackey v. Campbell Construction Co., supra,* 101 Cal.App.3d 774, 787-788.)

For all of the foregoing reasons, we conclude that the judgment notwithstanding the verdict should be reversed.

## II

### DEFENDANT'S CROSS-APPEAL

Defendant's cross-appeal from the judgment on the jury verdict raises virtually the same issues presented by plaintiff's appeal from the judgment notwithstanding the verdict.

(a) *Applicability of Peculiar Risk Doctrine:*

Defendant, incorporating by reference its arguments in response to plaintiff's appeal, contends that the jury should not have been instruct-

ed on the peculiar risk doctrine because it was inapplicable as a matter of law. For reasons expressed in our earlier discussion of that issue in connection with plaintiff's appeal, defendant's contention lacks merit.

(b) *Refusal to Instruct That Defendant Was Not Liable for Negligence of Contractor*:

█ Defendant makes the additional contention on its cross-appeal that the court erred in refusing to give a proffered instruction that an employer of an independent contractor is not liable for the negligent acts of the contractor where the employer retains "only a general supervisory power necessary to insure completion of the work and not control of the manner by which the work was to be accomplished."[2] The proposed instruction might have been appropriate had the issue been the state's liability on agency principles. (See *McDonald* v. *Shell Oil Co.* (1955) 44 Cal.2d 785 [285 P.2d 902].) In the instant case, however, liability under the law of agency was not an issue. The cause was submitted to the jury on only two theories of liability: (1) The peculiar risk doctrine as expressed in Restatement section 416[3] and (2) liability of the employer under the rule stated in Restatement section 414 for failure to use due care in exercising control over the manner in which the work was performed.[4] Defendant's proposed instruction was inappropriate under either theory.

---

[2]The proposed instruction read: "The employer of an independent contractor may be liable for the negligent acts of the independent contractor if the employer retains control over the work that exceeds a broad, general supervisory power. Liability for the negligent acts of the independent contractor does not lie, however, if the employer of the independent contractor retains only a general supervisory power necessary to insure the proper completion of the work, and not control of the means by which the work was to be accomplished.

"*McDonald* v. *Shell Oil Co.* 44 Cal.2d 785, 285 P.2d 902. *Restatement of Torts*, 2d 414."

[3]The court gave BAJI No. 13.21 (1977 ed.) reading as follows: "Ordinarily, one who employs an independent contractor is not liable for the acts or omissions of such contractor or its employees. However, one who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm proximately caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise [unless the employer himself has taken reasonable precautions against such risk]."

[4]The court instructed the jury on Restatement section 414 as follows: "One who entrusts work to an independent contractor but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

■ The peculiar risk doctrine does not depend upon the degree of control over the work retained by the employer; it depends upon the risk peculiar to the work contracted to be performed. ■ The proposed instruction, unless qualified, would have given the jury the mistaken notion that the employer could not be held liable under the peculiar risk doctrine if it only retained general supervisory control over the work. An instruction on liability under agency principles, unless qualified, is inappropriate in cases involving nondelegable duty, including the peculiar risk doctrine. (See Use Note to BAJI No. 13.20 (1977 ed.) p. 552.)

Defendant's proposed instruction would also have been improper under the rule of liability stated in Restatement section 414. Liability under that rule is based on the employer's negligent failure to use due care in exercising his retained control over the work; it is not a liability predicated on the doctrine of respondeat superior. As comment (a) to section 414 explains, if an employer retains control over the operative details of doing any part of the work, he may be liable for the negligence of the contractor's employee under agency principles; but if the employer retains "only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others," he may not be liable under agency principles but may be liable under rules stated in section 414 "unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others." (Rest., § 414, p. 387, com. (a).) Comment (c) of section 414 states that in order for the rule contained in section 414 to apply, "the employer must have retained at least some degree of control over the manner in which the work is done." In the case at bench, the question whether the state retained the degree of control over the manner of doing the work as would subject it to liability under the rule expressed in section 414 was for the jury. (See *Holman* v. *State of California* (1975) 53 Cal.App.3d 317, 335 [124 Cal.Rptr. 773].)

Defendant cites comment (c) to section 414 and *McDonald* v. *Shell Oil Co., supra,* 44 Cal.2d 785, as authority for its proposed instruction. As noted, comment (c) relates to the degree of control required to render the employer liable for its own failure to exercise due care; it does not relate to the degree of control required for liability under principles of master and servant. *McDonald* v. *Shell Oil Co., supra,* 44 Cal.2d 785, involved the question whether the employer retained such degree of control over the means by which the work was to be accomplished as

to alter the legal relationship between the independent contractor and the employer.

Even were we to assume that the proposed instruction could somehow be deemed pertinent to the issue of liability under Restatement section 414, the failure to give the instruction was clearly nonprejudicial. Unlike situations in which the jury only returns a general verdict, in this case we need not speculate on the theory of liability adopted by the jury because it made a special finding of liability under the peculiar risk doctrine. There is thus no reasonable probability that a different verdict would have been rendered had defendant's proposed instruction been given.

The judgment notwithstanding the verdict is reversed; judgment on jury verdict is affirmed and ordered reinstated.

Kaufman, J., and McDaniel, J., concurred.