MR. JUSTICE HUNT,
concurring in part and dissenting in part:
I concur with the portion of the majority’s opinion dealing with nondelegable duties based in reserved control. However, for the reasons stated below I would reverse the District Court and remand for trial.
The majority’s construction of Sections 416 and 427, Restatement (Second) of Torts (1981) renders those sections aimless. The majority notes that OSHA regulations call for sloping or support to the sides of trenches to prevent the trench walls from caving in and causing injury to workers. From this the majority concludes that trench digging is not inherently dangerous because trench boxes or sloping usually prevent injury. If the precautions necessary to avoid injury were excluded from the scope of Sections 416 and 427, what would be left? On this kind of interpretation no employer of an independent contractor would ever be liable for any act of negligence in failing to take precautions against inherent risks. This reading of those sections strips them of any purpose. We may as well rely on the common law general rule that employers of independent contractors are not liable for injury caused by the contractors’ negli *529 gence, without need to analyze the exceptions to that general rule embodied in Sections 416 and 427.
The majority relies on the decision of the North Dakota Supreme Court in Peterson v. City of Golden Valley (N.D.1981). 308 N.W.2d 550, to ground its interpretation of those sections. However, that interpretation is contrary to the comments to the Restatement and to the interpretation given those sections by the majority of state courts, and by this Court in previous cases.
Section 408, Restatement (Second) of Torts states the general common law rule that the employer of an independent contractor is not liable for the harm caused by the independent contractor. The first of many departures from that rule was taken in Bower v. Peate (1876), 1 Q.B.D. 321. The exceptions to the rule have multiplied so that “[i]ndeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions.” Shannon v. Wright (1977), 181 Mont. 269, 275, 593 P.2d 438, 441. Pacific Fire Ins. Co. v. Kenny Boiler & Mfg. Co. (1937), 201 Minn. 500, 277 N.W. 226.
The Restatement notes that the exceptions fall into three categories. Sections 416 and 417 belong to the categories of “nondelegable duties of the employer, arising out of some relation toward the public or the particular plaintiíf;” and “[w]ork which is specially, peculiarly, or ‘inherently’ dangerous.” Restatement (Second) of Torts (1981), at 371, 394; Ulmen v. Schwieger (1932), 92 Mont. 331, 247, 12 P.2d 856, 859; A.M. Holter Co. v. Western Mtge. & Warranty Co. (1915), 51 Mont. 94, 99, 149 P. 489, 490. Chesapeake & Potomac Tel. v. Chesapeake Util. (Del.Super. 1981), 436 A.2d 314, 324, 325 n. 11.
Sections 416 and 427 involve duties which for policy reasons may not be delegated by the employer of independent contractors to' those contractors. Castro v. State (1981), 114 Cal.App.3d 503, 510, 170 Cal.Rptr. 734, 737; Heath v. Huth Engineers (1980), 279 Pa. Super. 90, 420 A.2d 758, 760; Smith v. Inter-County Telephone Co. (Mo.1977), 559 S.W.2d 518. “If the circumstances [of the case] fall within this rule a primary, nondelegable duty is imposed upon the employer . . .” Smith, 559 S.W.2d at 521 (Emphasis added.)
Attention must be turned to the language of those sections:
“Section 416. Work Dangerous in Absence of Special Precautions. One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions *530 are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.”
“Section 427. Negligence as to Danger Inherent in the Work. One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor’s failure to take reasonable precautions against such danger.”
Along with the majority, I note Comment a to Section 416 which states: “The two rules [Section 416 and Section 427] represent different forms of the same general rules ...” I will also consider them together, although I also note:
“The Rule stated in [Section 416] is more commonly stated and applied where the employer should anticipate the need for some specific precaution . . . [while] . . . Section 427 is more commonly applied where the danger involved in the work calls for a number of possible hazards, as in the case of blasting, or repainting carried on upon a scaffold above the highway.”
Chesapeake & Potomac Tel. v. Chesapeake Util. (Del.Super. 1981), 436 A.2d 314, 326, quoting Retatement (Second) of Torts (1981), at 395.
The terms “peculiar risk” and “special precautions” may lead the reader to believe the subject of these sections is an atypical or heightened risk which would necessitate extraordinary precautions. However the comments to the Restatement point out, “ ‘[p]eculiar’ does not mean that the risk must be one which is abnormal to the type of work done, or that it must mean an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself . . . arising out of the particular situation created, and calling for special precautions.” Restatement (Second) of Torts (1981), at 396, Comment b and 385-86, Comment b. See also Castro v. State (1981), 114 Cal.App.3d 503, 510-511, 170 Cal.Rptr. 734, 738; Griesel v. Dart Industries (1979), 23 Cal.3d 578, 153 Cal.Rptr. 213, 217, 591 P.2d 503, 507; Aceves v. Regal Pale Brew. Co. (1979), 24 Cal.3d 502, 156 Cal.Rptr. 41, 44, 595 P.2d 619, 622; Smith v. Inter-County Telephone Co. (Mo. 1977), 559 S.W.2d 518, 522.
The illustrations to Sections 416 and 427 clearly indicate “special *531 precautions” means precautions specially deigned to counter the risk, not extraordinary precautions. Among those special precautions necessitated by the inherent risks of work situations portrayed in the illustrations are a fence around an excavation, shoring up a common wall between two houses when one house is being demolished, and restraining a paint bucket so that it does not fall from scaffolding. These precautions are ordinary in the sense that a reasonably cautious contractor would take them. What is “special” about them is that the particular situation arising out of the work itself calls for precautions specially designed to counter inherent risks.
There are two kinds of negligence by a contractor which will not be ascribed to the employer under Sections 416 and 427. First, a risk created by negligently undertaking a “normal, routine matter of customary human activity” is not a risk peculiar to, that is “arising out of the particular situations created” by, the work itself. Restatement (Second) of Torts (1981), at 385; Griesel v. Dart Industries, Inc. (1979), 23 Cal.3d 578, 153 Cal.Rptr. 213, 217, 591 P.2d at 507. Second, risks collateral, or foreign to the normal or contemplated risks of doing the work are not attributable to the employer of an independent contractor. Restatement (Second) of Torts (1981), at 414; Aceves v. Regal Pale Brew. Co. (1979), 156 Cal.Rptr. 41, 45, 595 P.2d at 623; Shope v. City of Billings (1929), 85 Mont. 302, 309, 278 P.826, 828. Therefore, the kind of risk left within the scope of Sections 416 and 427 is one that is inherent in the situation created by the work, “recognizfable] in advance as requiring special precautions.” Chesapeake and Potomac Tel.. (Del.Super. 1981), 436 A.2d at 330 (referring to the comments to Section 426, the “mirror rule” to Section 427).
Finally, there is one more section in the Restatement which deserves attention. Section 413 falls in the first category of exceptions to the general rule of employer nonliability. That category of exceptions are those relating to the “[n]egligence of the employer in selecting, instructing, or supervising the contractor.” Restatement (Second) of Torts (1981), at 371. Section 413 places a duty upon the employer to provide for the taking of precautions against the dangers involved in work entrusted to a contractor. The comments to that section indicate that one way the employer may provide for the taking of precautions is by requiring in the contract between the employer and contractor that such precautions be taken. While Section 413 is similar to Section 416, they are based on different policy grounds. Section 413 places a duty on the employer to exercise rea *532 sonable care in selecting a contractor and in drafting the contractual requirements placed on that contractor in his discharge of the work. Section 416 is based on the existence of a duty of care owed the public or the particular plaintiff. Castro v. State (1981), 114 Cal.App.3d 503, 510, 170 Cal.Rptr. 734, 737. Comment f to Section 413 points out the “fact that the contract under which work is done provides that the contractor shall take the necessary special precautions does not necessarily relieve the employer from liability, since he may be liable under the rule stated in Section 416.” Restatement (Second) of Torts (1981), at 386. Cf. Ulmen (1932), 92 Mont. 331, 347, 12 P.2d 856, 860. Comment c to Section 416 spells out the crucial difference in the two sections:
“Section 416 deals with the liability of one who employs a contractor to do such work, even though he stipulates in his contract or in a contract with another independent contractor that the precautions shall be taken, for bodily harm caused by the negligent failure of either contractor to take such precautions.”
Montana has long recognized that an employer may not “set in operation causes dangerous to the person and property of others . . . [and then] divest himself of the primary duty he owes to other members of the community by contracting with others for the performance of work, the necessary and probable result of which is injury to third persons.” A.M. Hotter Co. v. Western Mtge. & Warranty Co. (1915), 51 Mont. 94, 99, 149 P. 489, 490. See also Fagan v. Silver (1920), 57 Mont. 427, 432, 188 P. 900, 901. In such a case the party authorizing the work is justly regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out by contract.” Shope, 85 Mont. at 309, 278 P.2d at 828.
In the case at hand, Montana Power Company contracted with Bechtel, who contracted with COP, for the work. The contract between Bechtel and COP did include safety provisions. Clearly then Montana Power Company and Bechtel are not liable under the rule of Section 413. However, they may not escape liability if the rules of Sections 416 or 427 apply. The majority opinion characterizes sloping or using a trench box when digging trench as “standard procedures.” I agree with that characterization as far as it goes. What the majority fails to see is that these standard procedures are specially designed to guard against dangers inherent in, or peculiar to, trenching.
In A.M. Hotter Co. v. Western Mtge. and Warranty Co. (1915), 51 Mont. 94, 149 P. 489, a contractor hired by Western Mortgage to *533 repair a roof negligently left roofing materials atop the building. The wind blew these materials off the roof and caused damage to a nearby building. The jury found, and this Court affirmed, that Western Mortgage was liable for “failing to anticipate and guard against the probable consequences” of not taking precautions necessary to prevent the materials from being blown off the roof. A. M. Holter, 51 Mont. 94, 99, 149 P. 489, 491.
Similarly in Ulmen v. Schwieger (1932), 92 Mont. 331, 12 P.2d 856, the jury found work involving digging and cementing a culvert across a highway inherently dangerous. In that case the subcontractor negligently failed to place detour signs and barriers and Ulmén was injured by driving over the culvert at a speed reasonable for highway travel. In affirming the judgment against the general contractor who employed the negligent subcontractor this Court noted, “The erection and maintenance of adequate barriers and detour signs to warn the traveling public was the very thing that would prevent the work from being intrinsically dangerous.” Ulmen, 92 Mont, at 346, 12 P.2d at 859. It is my position that a jury could well find that the use of sloping or a trench box, as well as frequent checks on the laser marking the grade of the trench, were the very things that would have prevented the risks inherent in trench digging. See Barron v. United States (D. Hawaii 1979), 473 F.Supp. 1077, Aff’d. in relevant part; Barron v. United States (9th Cir.1981), 654 F.2d 644; Smith v. Inter-County Telephone Co. (Mo. 1977), 559 S.W.2d 518; Griesel v. Dart Industries, Inc. (1979), 23 Cal.3d 578, 153 Cal.Rptr. 213, 591 P.2d 503; Heath v. Huth Engineers, Inc. (1980), 279 Pa.Super.90, 420 A.2d 758 (all cases where trench-digging under the circumstances of each case was found to be inherently dangerous). Because it is a factual question whether particular work is inherently dangerous under the circumstances, summary judgment is inappropriate. Chesapeake, (Del.Super. 1981), 436 A.2d at 329; Castro (1981), 170 Cal.Rptr. 738; Smith (Mo. 1977), 559 S.W.2d at 524.
Yet there is one question of law which would have to be answered before the case could be remanded for trial. Case law prior to the adoption of the 1972 Montana Constitution held that nondelegable duties ran only to third parties and not to employees of a contractor or subcontractor. State ex rel. Great Falls Nat’l Bank v. District Court (1969), 154 Mont. 336, 463 P.2d 326. However, Art. II, Section 16 of the Montana Constitution guarantees full legal redress, with a workers’ compensation exception for the liability of fellow employees and immediate employers. In Stepanek v. Kober Constr. (Mont. *534 1981), 625 P.2d 51, 55, 38 St.Rep. 385, 396, we held that this constitutional provision mandated that a nondelegable duty based in contract did run from an employer of an independent contractor to that contractor’s employees. I can see no language in the Montana Constitution creating an exception to the right of full legal redress riding on a distinction between a nondelegable duty based on inherent risks and a nondelegable duty based in contract.
Therefore I would hold that the Montana Power Company and Bechtel have nondelegable duties running to the appellant Kemp if, on remand, the jury would find that inherent risks were present. Mydlarz v. Palmer /Duncan Construction Co. (Mont. 1984), [209 Mont. 325,] 682, P.2d 695, 707, 41 St.Rep. 738, 751 (Morrison, J. dissenting). I would remand for jury determination of whether inherent risks were present and whether a duty to take precautions was breached. This determination would necessarily include whether, on the facts involved, COP violated the Montana Safe Place to Work Statute, Section 50-71-201, MCA. Any violation of this statute would be attributable to Bechtel and Montana Power Company, if the jury also finds the trenching in previously trenched ground, conducted in the manner it was, inherently dangerous.
HONORABLE JOSEPH B. GARY, District Judge, sitting for MR. JUSTICE SHEEHY, joins in the dissent of MR. JUSTICE HUNT.