Filed 6/26/13  Groves v. Puscizna CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| KRYSTAL GROVES, | |
| Plaintiff and Appellant, | G046410 |
| v. | (Super. Ct. No. 30-2010-00357052) |
| DAVID PUSCIZNA et al., | |
| Defendants and Appellants. | |
| KELLEY GROVES, | (Super. Ct. No. 30-2010-00430218) |
| Plaintiff and Respondent, | |
| v. | O P I N I O N |
| DAVID PUSCIZNA et al., | |
| Defendants and Appellants. | |

Appeals from a judgment of the Superior Court of Orange County, Jamoa A. Moberly, Judge.  Affirmed in part, reversed in part.

Ford, Walker, Haggerty & Behar, K. Michele Williams, Jon Paulson and Daniel C. Heaton for Defendants and Appellants.

Sanford A. Kassel; Law Offices of Robert H. Pourvali and Robert H. Pourvali for Plaintiff and Appellant Krystal Groves.

Brown, Brown & Brown, David S. Brown and Aaron M. Brown for Plaintiff and Respondent Kelley Groves.

## INTRODUCTION

In this case, a relatively straightforward personal injury action became a procedural minefield. Respondents Krystal Groves and Kelley Groves were involved in an auto accident when appellant Joanne Puscizna's SUV ran into their pickup truck.[1] Puscizna stipulated to liability, and a jury trial proceeded on that basis as to both Krystal and Kelley.

The jury found in Puscizna's favor on causation, and Krystal and Kelley moved for new trials and for judgments notwithstanding the verdict (JNOV).[2] The trial court granted all the motions and ordered new trials on damages.

Puscizna appealed, but not completely. The notice of appeal for Kelley specified the orders granting Kelley's new trial and JNOV motions as the subject of appeal, but the notice of appeal for Krystal specified *only* the order granting Krystal's new trial motion. Accordingly, Krystal's JNOV order became final.

The issues relating to Kelley are uncomplicated. Although the trial court improperly granted Kelley's JNOV motion – and we reverse that judgment – we apply a far more deferential standard when we review an order granting a motion for new trial for insufficient evidence. Accordingly, we affirm the order granting Kelley's motion for new trial.

---

[1]     Joanne's husband, David, was also named as a defendant and is an appellant, but he was not involved in the accident.

[2]     "Hereafter, we refer to the parties by their first names, as a convenience to the reader. We do not intend this informality to reflect a lack of respect. [Citation.]" (*In re Marriage of Balcof* (2006) 141 Cal.Appl.4th 1509, 1513, fn. 2.)

As to Krystal, things are somewhat more involved.  As stated above, Puscizna did not appeal from the order granting Krystal's JNOV, so that order stands.  The order granting the new trial motion does not.  The trial court erred by failing to follow the requirements of Code of Civil Procedure section 657,[3] so we reverse that order.  We are thus left with an order granting a partial JNOV on the issue of causation.

A partial JNOV is not a final judgment.  Thus, Krystal's case must be retried, so that a final determination of the issues between her and Puscizna may be achieved.  Because Puscizna stipulated to liability in the first trial, the second will perforce be a rerun, at least in terms of the issues, of the first go-round.

## FACTS

Krystal and Kelley, cousins now in their 20s, were rear-ended on December 29, 2008, by Puscizna while Krystal was driving her father's Ford pickup.  Krystal and Kelley were stopped at a traffic light; Puscizna's SUV hit them while going between 6 and 10 miles per hour.  Kelley and Krystal were wearing their seat belts.  Everyone pulled off the road to exchange information; at the time of the accident, Puscizna testified, both Kelley and Krystal told her they were not injured and felt fine.  They exhibited no indications of injury, such as holding their necks or backs.  Krystal and Kelley then drove to the mall (their intended destination), had lunch, walked around the mall for several hours, and shopped.

A week after the accident, Kelley left California for a three-month student internship in Washington, D.C.  She completed her internship and returned to Southern California, where she graduated from the University of California at Irvine in June 2009.  In March 2010, she went to Japan for a year to teach English.

---

[3]     All further statutory references are to the Code of Civil Procedure.

Krystal and Kelley testified that they were in immediate pain after the accident. Both sought prolonged courses of treatment.

Krystal went to a chiropractor several times a month between January and October 2009, twice in 2010, and three times in 2011. Initially, she complained of headaches, pain in her chest, neck, back, shoulders, ankles, numbness, and difficulty sleeping. The chiropractor recommended an MRI test of her left shoulder and her upper and lower spine.[4] She also sought the services of an orthopedist and a neurologist.[5]

Kelley testified that she told Puscizna at the scene of the accident that the back of her head hurt from hitting the headrest. The next day she went to see an orthopedic surgeon, Dr. O'Hara. She complained of stiffness in her neck and back, loss of mobility, pain in her head, and tingling in her arms. The doctor prescribed medications, took X-rays of her neck, and recommended physical therapy. Then the next week she left for an internship in Washington, D.C., where she did not go to a physical therapist. In January 2009, while in D.C., she saw a neurologist, Dr. Pulaski, complaining of continuing pain, dizziness, and difficulty sleeping. He arranged for her to have an MRI test. She also saw another D.C. physician, Dr. O'Brien, who ordered an MRI and X-rays of her neck in February 2009.

---

[4]     The chiropractor's diagnoses of Krystal on her first visit included "sprain, strain, occipital cervical subluxation, cervical thoracic subluxation, cervical enthesopathy, cervicalgia, cervical myospasm, cervical myalgia, loss of cervical lordosis, cervical nerve injury, cervical brachial  nerve injury, upper extremity subluxation, upper extremity myospasm and swelling, upper extremity pain, upper extremity joint pain . . . shoulder enthesopathy. [¶] [C]oncussion with no loss of consciousness, headaches, sleep disturbances, hypothalamus [*sic*], fatigue and lethargy, anxiety, depression, post-traumatic stress disorder, thoracic sprain/strain, thoracic enthesopathy, thoracalgia, thoracic myospasm, thoracic myalgia, rib strain/sprain, rib cage subluxation, chest pain, lumbar strain/sprain, lubosacral subluxation, lumbar enthesopathy, lumbago, lumbar myospasm, lumbar myalgia, lumbar disk herniation, lumbar nerve injury, lumbar neuritis, sacroiliac sprain/strain, sacroiliac subluxation, hip and pelvis subluxation, contusion to the head and neck, contusion to the shoulder, and contusion to the hip area."

[5]     The record is somewhat obscure on the issue of who treated Krystal for what. Videotaped depositions were used for several professionals, without any indication of their areas of expertise. These videotapes are not part of the record, and their audio portions were not transcribed. For example, the videotaped deposition of a Dr. Joseph Wu was played in court with no indication in the record of the nature of his testimony or whom, if anyone, he had treated. We have inferred some information about these witnesses from comments made during examinations of other witnesses, but otherwise we are completely in the dark.

Kelley returned to Southern California in March 2009 at the end of her internship. She began physical therapy in April 2009, which Dr. O'Hara had prescribed in December 2008. She had approximately 15 to 20 physical therapy sessions in Irvine, while she was still in school. After she graduated college in June 2009, she moved to El Segundo and continued physical therapy there. She returned to Dr. O'Hara, who ordered another MRI of her back in September 2009. She had approximately 25 physical therapy sessions in El Segundo then stopped because they had ceased to benefit her. At trial, she described herself as being in constant pain in her neck and back, nearly three years after the accident.

The two cases were consolidated and tried to one jury in September and October 2011. Puscizna stipulated to liability. A dozen doctors testified either in person or by videotape; two accident reconstructionists also testified. The jury heard testimony from Kelley, Krystal, Krystal's father, and Puscizna, among others.

Krystal and Kelley both moved orally for a directed verdict at the close of trial on the issue of whether defendant's negligence caused injury to them. Before the court ruled on the motion, the discussion turned to the wording of the special verdict form and the possible consequences of the jury's returning a "'no'" answer to the two causation questions, one for each plaintiff. Although the court did not explicitly deny the motion, the idea of a directed verdict seems to have been abandoned.

The jury returned a defense verdict against both Kelley and Krystal on the issue of causation. The jury replied "no" to the question "Was defendant Joanne Puscizna's negligence a substantial factor in causing harm to plaintiff . . . ?" for both Krystal and Kelley. The trial court entered judgment on the jury's verdict.

Kelley and Krystal each filed motions for JNOV and for new trials. Kelley moved for a new trial on the grounds of insufficient evidence and error of law. Krystal moved for a new trial on grounds of (1) irregularity in the proceeding, (2) insufficiency of

5

the evidence, (3) a verdict against law, and (4) error of law.  She moved for JNOV on the basis of insufficient evidence to support the jury's verdict.

The trial court granted Krystal's JNOV motion (as the verdict applied to her) on the causation issue and ordered a new trial on damages only.  With respect to Kelley, the court granted her motion for JNOV on the causation issue for insufficient evidence and granted her motion for a new trial on the same ground.

Puscizna appealed from the order granting Krystal's motion for new trial. She did not appeal from the order granting Krystal's JNOV motion.  As to Kelley, Puscizna appealed from both the order granting the JNOV motion and the motion granting the new trial.  Krystal, but not Kelley, filed a cross-appeal from the judgment.

## DISCUSSION

**I.**         **Puscizna's Appeal from Kelley's Post-Trial Motions**

**A.  Appeal from JNOV Motion**

"'A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support.  [Citation.]  [¶]  . . . As in the trial court, the standard of review [on appeal] is whether any substantial evidence – contradicted or uncontradicted – supports the jury's conclusion.'  [Citation.]"  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770; see also *Brennan v. Townsend & O'Leary Enterprises, Inc.* (2011) 199 Cal.App.4th 1336, 1345.)  The court may not weigh evidence or assess witness credibility.  (*Hauter v. Zogarts* (1975) 14 Cal.3d 104, 110; *Castro v. State of California* (1981) 114 Cal.App.3d 503, 512.)  If any substantial evidence or reasonable inference supports the verdict, the motion should be denied.

(*Hauter v. Zogarts, supra,* 14 Cal.3d at p. 110.)[6] "'Unless it can be said that, as a matter of law, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that an appellate court would be impelled to reverse it upon appeal . . . , a court is not justified in taking a case from a jury and itself rendering the decision.' [Citation.]" (*Urland v. French* (1956) 141 Cal.App.2d 278, 282.)

Although there was medical evidence that Kelley was injured in the accident, in addition to her own testimony, there was also evidence that would support a jury verdict of no causation. Evidently, the jury did not find Kelley to be a credible witness. Consequently, medical evidence based on her subjective reports would have been suspect in the jury's eyes.[7] This skepticism could have been reinforced by testimony from physician experts that every objective medical test administered to her returned normal results.[8] Her extended stays in Washington, D.C., and Japan may have struck the jury as incompatible with her testimony of pervasive and long-lasting pain. Finally, the testimony of the defense accident reconstruction expert, Isaac Ikram, at the end of the case could have sealed the jury's impression that Kelley was not hurt in the accident. Although the expert's testimony focused on brain injury, the jury could reasonably have extrapolated his conclusions to the claims of injury to Kelley's neck and back. In essence, he likened the impact of the accident to heading a soccer ball and stated that the force generated by the impact was equivalent to a ride on a roller coaster.

---

[6] Although an order granting a JNOV motion is not an appealable order, an appeal from an order granting a new trial, which is an appealable order (§ 904.1, subd. (a)(4)), makes the entire judgment, including the portion affected by the JNOV motion, subject to review. (*Beavers v. Allstate Ins. Co.* (1990) 225 Cal.App.3d 310, 330; see also *Baker v. American Horticultural Supply, Inc.* (2010) 186 Cal.App.4th 1059, 1071, fn. 5; *Dell'Oca v. Bank of New York Trust Co., N.A.* (2008) 159 Cal.App.4th 531, 553.)

[7] For example, Kelley told her orthopedic surgeon that Puscizna had been going between 30 and 35 miles per hour when the accident happened. She testified at trial that Puscizna's speed was between 25 and 30 miles per hour at impact. The accident reconstruction expert calculated that impact had occurred at between 6 and 10 miles per hour.

[8] The results of the tests were disputed. Some of the health care providers found evidence of injury, while others found no evidence of injury.

The trial court impermissibly weighed this evidence, stating, with respect to Kelley's motion, "[T]here was insufficient evidence for a jury to determine that plaintiff did not suffer compensable harm. Plaintiff's testimony and the testimony of Isaac Ikram are insufficient to support a finding that plaintiff did not suffer 'harm,' especially as there was uncontradicted medical evidence that plaintiff had suffered an injury."

The medical evidence of injury was not uncontradicted. While the evidence based on Kelley's subjective statements to her doctors supported a finding that she was injured, the objective evidence – the test results – supported the jury's determination that she was not. The Ikram testimony bolstered a finding of no causation.

Even if the medical evidence had been uncontradicted, the jury could still have made a valid finding of no causation. A jury is not required to accept even uncontroverted expert testimony, except as to the standard of care in professional negligence cases. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632-633.) An expert's opinion "'is only as good as the facts and reasons on which it is based. . . .'" (*Id.* at p. 633; see also *Conservatorship of McKeown* (1994) 25 Cal.App.4th 502, 509.)

In this case, the testimony supporting causation was based on Kelley's own reports, which the jury evidently found unpersuasive. As one of the physician-witnesses explained, "[I]f somebody says they have pain, [doctors] take them at their word for it." Jurors are under no such obligation.

The jurors in this case exercised their prerogative as triers of fact when they rejected this evidence in favor of the countervailing evidence. Some substantial evidence supported the jury's conclusion, and Kelley's JNOV motion should have been denied.

**B. Appeal from New Trial Motion**

"The standards for reviewing an order granting a new trial are well settled. After authorizing trial courts to grant a new trial on the grounds of '[e]xcessive . . . damages' or '[i]nsufficiency of the evidence,' section 657 provides: '[O]n appeal from an order granting a new trial upon the ground of insufficiency of the evidence . . . or upon

8

the ground of excessive or inadequate damages, . . . *such order shall be reversed as to such ground only if there is no substantial basis in the record for any such reasons.*' (Italics added.) Thus, . . . an order granting a new trial under section 657 'must be sustained on appeal unless the opposing party demonstrates that no reasonable finder of fact could have found for the movant on [the trial court's] theory.' [Citation.] Moreover, '[a]n abuse of discretion cannot be found in cases in which the evidence is in conflict and a verdict for the moving party could have been reached . . . .' [Citation.] In other words, 'the presumption of correctness normally according on appeal to the jury's verdict is replaced by a presumption in favor of the [trial court's] order.' [Citation.]" (*Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, 411-412.)[9]

The trial court in this case granted Kelley's motion for new trial on the ground of insufficient evidence. The jury could certainly have found in Kelley's favor on causation, if it had believed her. Kelley's own testimony, coupled with that of her witnesses, adequately supported a conclusion that she had suffered some harm, however slight, from the accident. On the evidence presented, a reasonable trier of fact could have found for Kelley on the trial court's theory that the accident did cause injury. We therefore must affirm the trial court's order granting Kelley a new trial.

---

[9] Puscizna has argued on appeal that the order granting the new trial motion was really a disguised order granting a JNOV motion and should therefore be reviewed using the standard for reviewing an order granting a JNOV. There are two problems with this argument. First, if the trial court truly granted a JNOV motion, that order is not appealable, and we would have to dismiss an appeal from it. (See *Herman v. Shandor* (1970) 8 Cal.App.3d 476, 479-480.) Second, and more important, the trial court clearly granted the new trial motion for insufficient evidence, as permitted by section 657. As we observed in *Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veteran's Affairs* (1998) 67 Cal.App.4th 743, granting a new trial motion simply means the process will have to be reenacted. It does not determine the winner, as granting a JNOV motion would. (*Id.* at pp. 751-752.)

In this case, the issue of damages remains to be determined in a new trial. Courts can unquestionably grant new trials on damages alone after liability has been decided. (See, e.g., *Liodas v. Sahadi* (1977) 19 Cal.3d 278, 286-287; *Shapiro v. Prudential Property & Casualty Co.* (1997) 52 Cal.App.4th 722, 726; *Hatch v.* Lewis (1969) 274 Cal.App.2d 150, 152; *Garcia v. San Gabriel Ready Mixt* (1959) 173 Cal.App.2d 355, 358-359; *Uhl v. Baldwin* (1956) 145 Cal.App.2d 547, 554.)

## II.	Appeal from Krystal's Post-Trial Motion

With respect to Krystal, the court granted her JNOV motion on the causation issue and set a new trial for damages only. Puscizna did not appeal from order granting Krystal's JNOV motion, so the order is final. (See *Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967 [notice of appeal defines scope by identifying order being appealed].) We therefore examine the order granting a motion for new trial on the issue of damages after a JNOV that Puscinza's negligence was a substantial factor in causing harm to Krystal.

In granting Krystal's two motions, the court's minute order read, "1) Plaintiff Krystal Groves's Motion for Order Granting Partial Judgment Notwithstanding the Verdict [¶] Grant. Plaintiff Krystal Groves Motion for Partial Judgment Notwithstanding the Verdict is granted. The Court vacates the juries' [*sic*] finding under Special Verdict Question No. 1 that defendant Joanne Puscizna's negligence was not a substantial factor in causing harm to plaintiff, and enters judgment in plaintiff's favor on this question. The Court has granted Plaintiff's Motion for New Trial, and therefore a new jury trial will be held solely on the issue of damages on 4-2-12 at 9am. [¶] Moving party to give notice. [¶] 2) Plaintiff Krystal Groves' Motion for New Trial [¶] Grant. See above."

Section 657 provides, "The order passing upon and determining the motion [for new trial] must be made and entered as provided in Section 660 and if the motion is granted must state the ground or grounds relied upon by the court, and may contain a specification of reasons. If an order granting such motion does not contain such specification of reasons, the court must, within 10 days after filing such order, prepare, sign and file such specification of reasons with the clerk. The court shall not direct the attorney for a party to prepare either or both said order and said specification of reasons." The order granting Krystal's new trial motion did not specify any grounds, and the trial

court never filed a specification of reasons at any time within 10 days of filing the order granting the motion.

In *Sanchez-Corea v. Bank of America* (1985) 38 Cal.3d 892 (*Sanchez-Corea* ), our Supreme Court explained what happens when the court fails to follow the dictates of section 657. The trial court granted Bank of America's motion for new trial exactly 60 days after notice of entry of judgment was mailed, i.e., the last day on which it retained jurisdiction to rule on the motion. The order did not specify any grounds or reasons. (*Id.* at p. 898.) A week later, the court filed a new order vacating the judgment and granting a new trial for insufficient evidence. (*Ibid.*)

The Court held that the first order was defective because it had failed to specify any grounds or reasons. (*Sanchez-Corea, supra*, 38 Cal.3d at p. 900.) The second order was ineffective as an act in excess of the trial court's jurisdiction because it was filed too late. (*Id.* at p. 905.) The Court also noted that an appellate court cannot affirm an order granting a motion for a new trial on grounds of insufficient evidence or excessive or inadequate damages unless these grounds have been specified in the order. (*Ibid.*; see also § 657.) "If, however, the motion states any *other* ground for a new trial, an order granting the motion will be affirmed if any other ground legally requires a new trial. [Citations.] [¶] Where, as here, the trial court has failed to make a timely specification of any ground for the new trial order, the burden is on the movant to advance any grounds stated in the motion upon which the order should be affirmed, and a record and argument to support it." (*Sanchez-Corea, supra,* 38 Cal.3d at pp. 905-906.)[10]

Krystal has not been able to advance any ground stated in her motion other than insufficient evidence or inadequate damages upon which we could affirm the order or any record or argument to support such an affirmance. Accordingly the order granting her motion for new trial must be reversed. (*Sanchez-Corea, supra,* 38 Cal.3d at p. 910.)

---

[10] We asked for supplemental briefing on this issue, the burden, obviously, being on Krystal to provide the grounds, record, and argument.

11

The reversal of the order granting a new trial does not end the analysis, however. Because Puscizna did not appeal from the order partially granting Krystal's JNOV motion, that order is now final and unreviewable. If it had been the only order granted posttrial, we could not have reviewed it on appeal, in the absence of a final judgment incorporating the order. (See *Walton v. Magno* (1994) 25 Cal.App.4th 1237, 1240-1241[appeal from JNOV order is appeal from interlocutory judgment of liability only].)[11] Because the trial court granted a motion for new trial, which order is appealable (§ 904.1, subd. (a)(1)), we could have reviewed the entire package, if the notice of appeal had specified both orders. (See *Beavers v. Allstate Ins. Co., supra,* 225 Cal.App.3d at p. 330.) But it did not.

The only order left standing in Krystal's case is therefore a partial JNOV, which is not a final judgment disposing of all issues between Krystal and Puscizna. (Cf. *Moorehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 741 [final judgments "leave nothing to be decided between one or more parties and their adversaries"]; § 577.) We therefore must, reluctantly, return the case to the lower court for another trial. We point out that, although the issue of causation has been theoretically determined in Krystal's favor, the breadth of the causation has not. In other words, although the accident caused Krystal some harm, the extent of the harm, and thus the amount of her resulting damages, still remains to be seen. Since Puscizna stipulated to liability in the first trial, the second trial will, in effect, cover all the same issues as the first. This duplication of effort is regrettable, but, we believe, unavoidable.

---

[11] The court could not have entered such a final judgment, because the order granting the JNOV motion was not a "final determination of the rights of the parties" in the lawsuit. (See § 577.)

12

## DISPOSITION

The order granting Kelley Groves's judgment notwithstanding the verdict is reversed. The order granting her motion for new trial is affirmed.

The order granting Krystal Groves's motion for a new trial on damages is reversed. The case is remanded to the trial court for trial on the amount of damages caused by her injury pursuant to the partial judgment notwithstanding the verdict entered in her favor. Her cross-appeal is dismissed as moot.

Respondents are to recover their costs on appeal.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.


13