[No. C058641. Third Dist. Dec. 14, 2009.]

AMERICAN STATES INSURANCE COMPANY, Plaintiff and Appellant, v. PROGRESSIVE CASUALTY INSURANCE COMPANY et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

**COUNSEL**

Law Offices of William J. Diffenderfer, Lisa L. Pan; Lombardi, Loper & Conant, Ralph A. Lombardi and Lori A. Sebransky for Plaintiff and Appellant.

Coddington, Hicks & Danforth, Randolph S. Hicks and Andrew P. Collier for Defendant and Respondent Progressive Casualty Insurance Company.

McNulty & Saacke and Charles F. Saacke for Defendant and Respondent Wilshire Insurance Company.

**OPINION**

**BUTZ, J.**—Liability insurance policies for commercial motor vehicles typically include an "omnibus clause." As pertinent here, that clause defines as an "insured" one who is vicariously liable for the conduct of a named insured or a permissive user in using or operating the covered vehicle.

In this appeal, we conclude that such an "omnibus clause" may make a person or entity that is potentially vicariously liable under the peculiar risk doctrine an "insured," and thereby entitled to a defense pursuant to the insurance policy. Under the peculiar risk doctrine, one may be held vicari-

ously liable if one hires an independent contractor to do work that is likely to create a peculiar risk of harm to others unless special precautions are taken.

The alleged peculiar risk in the present case arose out of a trucker-pedestrian accident at the lone entrance of a construction site. There is evidence that this intersection entrance required the trucker to make a U-turn (while driving westbound in eastbound lanes), encroach on at least two pedestrian crosswalks, jump a curb, and drive across a sidewalk.

We reverse a summary judgment and a stipulated judgment that concluded, as a matter of law, that the trucker's insurers did not owe a duty to defend the developer/general contractor/grading contractor under any vicarious liability theory.

## FACTUAL AND PROCEDURAL BACKGROUND

In this action, plaintiff and appellant American States Insurance Company (American) seeks a defense on behalf of its insureds—in the underlying pedestrian/trucker lawsuit—from defendant and respondent insurers, Progressive Casualty Insurance Company (Progressive) and Wilshire Insurance Company (Wilshire). American also seeks a declaration that Progressive provide the primary coverage for the lawsuit.

The trucker-pedestrian collision occurred as follows. On July 15, 2005, Victor Meza, a self-employed trucker, was driving a tractor-trailer at the only entrance to a construction site in San Diego when the rear portion of his trailer ran over a pedestrian, Yevdokia Bristman (Bristman). As a result, both of Bristman's legs had to be amputated. Meza was the sole owner and operator of the tractor (truck) and was insured by Progressive. Western Trucking LLC (Western) was the sole owner of the trailer and was insured by Wilshire.

At the time of the accident, Meza was hauling dirt under an agreement with Western. Western in turn was operating under an oral agreement with Vinci Pacific Corporation (Vinci), the grading contractor on the construction project (the Project). The Project's general contractor was Garden Communities (Garden). The Project's developer was TRII LLC (TRII). Vinci was a named insured under a commercial auto policy issued by American; Garden and TRII were additional insureds under that policy. Vinci, Garden and TRII (collectively, the Vinci parties) tendered their defense of the pedestrian Bristman's action (Bristman Lawsuit) to American. American accepted the tender under a reservation of rights.

The complaint in the Bristman Lawsuit, which was filed in San Diego Superior Court, alleged in part a cause of action for motor vehicle negligence against the Vinci parties, claiming that they employed Meza and that Meza and Western were their agents. The Bristman Lawsuit also alleged that the Vinci parties were liable for failing to take necessary safety precautions at the Project's intersection entrance. Meza and Western, in turn, cross-complained against each other and the Vinci parties, alleging that the Vinci parties were vicariously liable.

American tendered the defense of the Vinci parties in the Bristman Lawsuit to Progressive and Wilshire. In denying this tender, Progressive and Wilshire noted that the Vinci parties were not named or additional insureds under the Progressive or Wilshire policies, and were not using the truck involved in the Bristman accident.

In the Bristman Lawsuit, the Vinci parties individually moved for summary judgment. As relevant here, those parties disputed Bristman's claim that they were vicariously liable for Meza's operation of his truck. In denying these summary judgment motions, the Bristman trial court found in part that there were triable issues of material fact concerning (1) whether Garden retained control over Meza's operation of his truck, (2) whether the peculiar risk doctrine applied, and (3) whether Vinci was a substantial factor in causing Bristman's injuries.[1]

That brings us to the present action, which American filed in Sacramento Superior Court (hereafter Defense Lawsuit). Through this action, American seeks (1) declaratory relief concerning Progressive's and Wilshire's duty to defend the Vinci parties in the Bristman Lawsuit, and (2) reimbursement of sums American paid in defending the Bristman Lawsuit.[2]

In the Defense Lawsuit, American moved for summary adjudication and Wilshire moved for summary judgment/adjudication. Both motions raised the dispositive issue of whether Progressive and Wilshire had a duty to defend the Vinci parties in the Bristman Lawsuit. After taking judicial notice of the Bristman Lawsuit—in the sense that Progressive and Wilshire had notice of plaintiff Bristman's contentions and supporting facts—the trial court in this Defense Lawsuit found, as a matter of law, that Progressive and Wilshire did

---

[1] The summary judgment motions of the Vinci parties in the Bristman Lawsuit were filed after American had tendered the defense of the Vinci parties to Progressive and Wilshire. Progressive and Wilshire were involved in the Bristman Lawsuit from the outset, defending their respective insureds, Meza and Western. Furthermore, the existence of triable issues regarding retained control and peculiar risk was fully litigated in the Vinci parties' summary judgment motions in the Bristman Lawsuit.

[2] Apparently, Bristman has already settled with the Vinci parties, Meza, and Western.

not have any duty to defend the Vinci parties in the Bristman Lawsuit. The defense trial court found that there was no agency relationship between Meza/Western and the Vinci parties, and that the peculiar risk doctrine did not apply. A judgment for Wilshire, and a stipulated judgment for Progressive, followed. This appeal from American then ensued.

## DISCUSSION

### I. Background

#### A. *The Issue*

The dispositive issue is whether there is a triable issue of material fact that American's insureds, the Vinci parties, were potentially vicariously liable in the Bristman Lawsuit under the theory of retained control establishing agency or under the doctrine of peculiar risk. We answer "no" as to the retained control theory, but "yes" as to the peculiar risk doctrine. Accordingly, as we shall explain, Progressive and Wilshire owed the Vinci parties—pursuant to this potential vicarious liability under the peculiar risk doctrine—a duty to defend them in the Bristman Lawsuit, absent additional evidence regarding this duty.

#### B. *Standard of Review*

A summary judgment is to be upheld if all the evidentiary papers submitted—which we review independently—show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We do not resolve factual issues but ascertain whether there are any to resolve. (Code Civ. Proc., § 437c, subd. (c); *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305 [130 Cal.Rptr.2d 347] (*Colores*); *Flait v. North American Watch Corp.* (1992) 3 Cal.App.4th 467, 474–475 [4 Cal.Rptr.2d 522].)

Because a summary judgment denies the losing party its day in court, we liberally construe the evidence in support of that party and resolve doubts concerning the evidence in that party's favor. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517]; *Colores, supra*, 105 Cal.App.4th at p. 1305.)

#### C. *Legal Principles Governing Duty to Defend and Burden of Proof in Summary Judgment/Declaratory Relief Context*

A liability insurer must defend its insured whenever it ascertains facts that give rise to the *potential* of liability under the policy. (*Montrose Chemical*

Corp. v. Superior Court (1993) 6 Cal.4th 287, 295 [24 Cal.Rptr.2d 467, 861 P.2d 1153] (Montrose); Gray v. Zurich Insurance Co. (1966) 65 Cal.2d 263, 275–277 [54 Cal.Rptr. 104, 419 P.2d 168] (Gray); Amato v. Mercury Casualty Co. (1993) 18 Cal.App.4th 1784, 1789–1790 [23 Cal.Rptr.2d 73].)

"The insurer's duty to defend the 'insured' includes both the named insured(s) and anyone else included in the policy's definition of 'insured.' " (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2009) ¶ 7:514.5, p. 7B-7 (rev. # 1, 2009) (hereafter Croskey); see also Maryland Casualty Co. v. Nationwide Ins. Co. (1998) 65 Cal.App.4th 21, 29–30 [76 Cal.Rptr.2d 113].)

In determining its duty to defend, the insurer must consider facts from any source—the complaint, the insured, and other sources. (Montrose, supra, 6 Cal.4th at pp. 298–299; Gray, supra, 65 Cal.2d at p. 276; Croskey, supra, ¶ 7:581, p. 7B-27 (rev. # 1, 2009).) An insurer does not have a continuing duty to investigate the potential for coverage if it has made an informed decision on coverage at the time of tender. (Gunderson v. Fire Ins. Exchange (1995) 37 Cal.App.4th 1106, 1114 [44 Cal.Rptr.2d 272].) However, where the information available at the time of tender shows no coverage, but information available later shows otherwise, a duty to defend may then arise. (See Marie Y. v. General Star Indemnity Co. (2003) 110 Cal.App.4th 928, 957 [2 Cal.Rptr.3d 135]; Croskey, supra, ¶¶ 7:519, 7:519.5, p. 7B-9 (rev. # 1, 2009).)

■ In an action in which some claims are potentially covered and others are not, the insurer must defend the entire action, including those claims for which there is no potential coverage under the policy—even if those claims predominate. It is enough that a single claim is potentially covered by the policy; the insurer owes a duty to defend even if all other claims against the insured are clearly not covered. This duty to defend the entire "mixed" action is justified, not contractually, but "prophylactically, as an obligation imposed by law in support of the [insurance] policy." (Buss v. Superior Court (1997) 16 Cal.4th 35, 48–49 [65 Cal.Rptr.2d 366, 939 P.2d 766] (Buss), fn. omitted; see Horace Mann Ins. Co. v. Barbara B. (1993) 4 Cal.4th 1076, 1081, 1084 [17 Cal.Rptr.2d 210, 846 P.2d 792]; Cassady v. Morgan, Lewis & Bockius LLP (2006) 145 Cal.App.4th 220, 235 [51 Cal.Rptr.3d 527]; Croskey, supra, ¶¶ 7:629–7:630.1, p. 7B-41 (rev. # 1, 2009).) This duty to defend an entire action continues "until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." (Horace Mann, supra, 4 Cal.4th at p. 1081; see also id. at p. 1084.) The defending insurer may have a right to be reimbursed for defense costs allocable solely to claims for which there was no potential coverage under the policy. (Buss, supra, 16 Cal.4th at pp. 50–51.)

 In resolving the question of whether a duty to defend exists—tendered in the context of a summary adjudication/ summary judgment motion in a declaratory relief action—the insurer has a higher burden than the insured. "[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*"; the insurer, in other words, must present undisputed facts that eliminate any possibility of coverage. (*Montrose, supra,* 6 Cal.4th at p. 300; see *Vann v. Travelers Companies* (1995) 39 Cal.App.4th 1610, 1614 [46 Cal.Rptr.2d 617].)[3]

### D. *Pertinent Insurance Policy Language*

The Progressive policy under which Meza, the trucker, was a named insured (with his truck) provided, as pertinent:

"PART I—LIABILITY TO OTHERS [¶] . . . [¶]

"We will pay damages . . . for which an **insured** is legally liable because of an accident. We will defend any lawsuit for damages which are payable under this Policy . . . .

"Additional Definitions Used in this Part Only:

"When used in PART I—LIABILITY TO OTHERS, '**Insured**' means:

"1. You [Meza]; [¶] . . . [¶]

"3. Any other person driving your insured auto with your permission and within the scope of that permission;

"4. *Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this PART I—LIABILITY TO OTHERS while driving your insured auto.*" (Some boldface omitted, italics added.)

---

[3] Also, an insurer is not permitted to avoid its duty to defend by seeking declaratory relief based on facts in dispute in the underlying liability action, because establishing certain facts in the declaratory relief action could prejudice the insured in the liability action. (*Montrose, supra,* 6 Cal.4th at p. 301; see Croskey, *supra,* ¶¶ 7:668, 7:669, p. 7B-59 (rev. # 1, 2009).) The solution to this dilemma is to stay the declaratory relief action pending resolution of the liability action. (Croskey, *supra,* ¶¶ 7:668, 7:669, p. 7B-59.) Given the procedural posture of this case (see fns. 1 & 2, *ante*) and certain undisputed facts, we are able to address here whether there is a triable issue of material fact that American's insureds, the Vinci parties, were potentially vicariously liable in the Bristman Lawsuit under the theory of retained control establishing agency or under the doctrine of peculiar risk, without prejudice to those insureds in the Bristman Lawsuit.

The Wilshire policy applied to the Western trailer (an insured auto) that Meza was pulling, and provided, as pertinent:

"SECTION II—LIABILITY COVERAGE [¶] . . . [¶]

"We will pay all sums an '**insured**' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' [¶] . . . [¶]

"We will have the right and duty to defend any '**insured**' against a 'suit' asking for such damages . . . .

"1. Who Is An **Insured**

"The following are '**Insureds**:'

"a. You [Western] for any covered 'auto.'

"b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow except [exceptions inapplicable]: [¶] . . . [¶]

"e. *Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability.*" (Boldface & italics added.)

With these legal principles and policy language in mind, we turn to the two issues of vicarious liability here: the theory of retained control establishing agency, and the doctrine of peculiar risk.

## II. The Theory of Retained Control Establishing Agency[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. The Peculiar Risk Doctrine

■ Generally, an "employer" (i.e., hirer) of an independent contractor is not liable for the negligence of the contractor or its employees. The exceptions to this rule, however, are numerous. (*Castro v. State of California* (1981) 114 Cal.App.3d 503, 509–510 [170 Cal.Rptr. 734] (*Castro*).) One of these exceptions is the peculiar risk doctrine as expressed in Restatement Second of Torts, sections 413 and 416. (*Castro*, at p. 510; *Toland v. Sunland Housing*

[*]See footnote, *ante*, page 18.

*Group, Inc.* (1998) 18 Cal.4th 253, 256 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*); *Griesel v. Dart Industries, Inc.* (1979) 23 Cal.3d 578, 585 [153 Cal.Rptr. 213, 591 P.2d 503] (*Griesel*), overruled on other grounds in *Privette v. Superior Court* (1993) 5 Cal.4th 689, 696 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*).)

Restatement Second of Torts, section 413 provides: "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions *if the employer* [¶] (a) *fails* to provide in the contract that the contractor shall take such precautions, *or* [¶] (b) *fails* to exercise reasonable care to provide in some other manner for the taking of such precautions." (Italics added.)

Restatement Second of Torts, section 416 states: "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them *by the failure of the contractor to exercise* reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." (Italics added.)

Given this italicized difference in language between Restatement Second of Torts, sections 413 and 416, as well as the sections' respective placements in the restatement's direct and vicarious liability sectors, older decisions have characterized section 413 as "direct" liability for an "employer" and section 416 as "vicarious" liability. (*Toland, supra,* 18 Cal.4th at pp. 259–260; see *Griesel, supra,* 23 Cal.3d at pp. 585–586; *Castro, supra,* 114 Cal.App.3d at p. 510; see also Rest.2d Torts, topic 2, introductory note to § 416, p. 394.)

More recent decisions from our state Supreme Court, however, have characterized the nature of liability set forth in both sections 413 and 416 of the Restatement Second of Torts as essentially "vicarious" liability. (*Toland, supra,* 18 Cal.4th at pp. 261–262, 265–266; *Privette, supra,* 5 Cal.4th at p. 695 & fn. 2.) As *Toland* explained: "[U]nder both sections 413 and 416, the hiring person's liability is cast in the form of the hiring person's breach of a duty to see to it that special precautions are taken to prevent injuries to others; in that sense, the liability is 'direct.' Yet, peculiar risk liability is not a traditional theory of direct liability for the risks created by one's own conduct: Liability under both sections is in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor, because it is the hired contractor who has caused the injury by failing to use

reasonable care in performing the work. We made this point in *Privette, supra,* 5 Cal.4th at page 695, in footnote 2: 'The conclusion that peculiar risk is a form of vicarious liability is unaffected by the characterization of the doctrine as "direct" liability in situations when the person hiring an independent contractor "fails to provide in the contract that the contractor shall take [special] precautions." ' " (*Toland, supra,* 18 Cal.4th at p. 265.)

■ The characterization of both section 413 and section 416 of the Restatement Second of Torts as vicarious liability follows because the "principal distinction in application of sections 413 and 416 . . . concerns the 'employer' and [the] independent contractor [he has hired] and not the liability of the 'employer' to others. Where there is a special [peculiar] risk of physical harm, the 'employer' is liable to third persons injured as a proximate result of the independent contractor's negligence *whether or not there is an agreement* requiring the independent contractor to take special precautions." (*Kelleher v. Empresa Hondurena de Vapores, S.A.* (1976) 57 Cal.App.3d 52, 61–62 [129 Cal.Rptr. 32], italics as added by quotation of *Kelleher* in *Toland, supra,* 18 Cal.4th at p. 266.) "The existence of the contract [between the 'employer' and the independent contractor], while not affecting the rights of others, does, however, significantly affect the rights of the 'employer' and independent contractor by obligating the independent contractor to indemnify the 'employer' for loss occasioned by his liability to others." (*Kelleher,* at p. 62, citing Rest.2d Torts, § 413, com. e[, p. 386].) In short, "[a] person held liable under the doctrine of peculiar risk is entitled to equitable indemnity from the independent contractor . . . . [Citations.] Thus, although peculiar risk is sometimes described as a 'nondelegable duty' rule . . . , it is in effect a form of vicarious liability." (*Privette, supra,* 5 Cal.4th at p. 695, citations omitted.)

Consequently, in light of *Toland* and *Privette,* the peculiar risk doctrine set forth in sections 413 and 416 of the Restatement Second of Torts is essentially a doctrine of vicarious liability. And the "doctrine relates to 'special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions. . . . "Peculiar" does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself.' (Rest.[2d Torts], § 413, com. b[, pp. 385–386].)" (*Castro, supra,* 114 Cal.App.3d at p. 510.)

That brings us to the issue of the applicability of the peculiar risk doctrine in the underlying Bristman accident. Again, by specifying the disputed

material facts and the summary judgment evidence supporting them, the trial court in the Bristman Lawsuit concluded, as to TRII's[4] motion there for summary judgment/adjudication, that a triable issue of material fact existed as to whether the peculiar risk doctrine applied. The Bristman trial court found: "[T]he manner in which . . . TRII allowed its subcontractors to use [the Project's lone] entrance required them to execute a [U]-turn (driving westbound in eastbound lanes), encroach on at least two pedestrian cross walks [sic], jump a curb, and drive across a sidewalk to access the [Project], all without assistance of . . . flagmen."

Based on the legal principles of peculiar risk set forth above and these disputed facts just noted, we conclude the doctrine of peculiar risk potentially applied to the Bristman accident. There is evidence from the Bristman Lawsuit, and judicially noticed in this Defense Lawsuit, showing that Meza/Western's truck-trailer access of the Project entrance involved a special risk, peculiar to the work to be done, that arose out of the place where it was to be done, and against which a reasonable man would recognize the necessity of taking special precautions. (*Castro, supra*, 114 Cal.App.3d at p. 510.)

The Defense Lawsuit trial court erred in concluding as a matter of law that the Bristman accident involved simply an ordinary dump truck accident (rather than a potential peculiar risk), similar to the ordinary accident in *A. Teichert & Son, Inc. v. Superior Court* (1986) 179 Cal.App.3d 657 [225 Cal.Rptr. 10]. In *Teichert*, a bicyclist riding westbound along the shoulder of a road simply collided with a dump truck turning left from the eastbound lane into the entrance of Teichert's property. (*Id.* at p. 660; see also *id.* at p. 661.) In contrast, here there was evidence showing that Meza/Western's trailer (bottom-dump dirt hauler) collided with Bristman while accessing the Vinci parties' Project entrance, a lone entrance which required Meza/Western "to execute a [U]-turn (driving westbound in eastbound lanes), encroach on at least two pedestrian cross walks [sic], jump a curb, and drive across a sidewalk . . . , all without assistance of . . . flagmen." This evidence shows no ordinary collision.

*Teichert* is not the exemplar in this regard. *Castro* is. There, dump trucks had to proceed to a point north of the construction site, turn around at an intersection or driveway, and back down for a distance of a half block or more to a backhoe for loading. During this procedure, an injury accident occurred. (*Castro, supra*, 114 Cal.App.3d at p. 512.) *Castro* found this evidence sufficient to support a jury verdict of vicarious liability under the

---

[4] TRII is the developer of the Project and one of the Vinci parties here.

peculiar risk doctrine of Restatement Second of Torts, section 416. (*Castro*, at p. 512; see also *id.* at pp. 509, 517.)[5]

■ Drawing from what we have said, then, we can now conclude that the Vinci parties were potentially liable for the Bristman accident under the vicarious liability theory of the peculiar risk doctrine. And this conclusion leads to one more, this one dispositive: Progressive and Wilshire, as the respective insurers of Meza and Western, owed the Vinci parties a duty of defense triggered by this potential vicarious liability.

Progressive and Wilshire beg to differ on numerous grounds, none of which we find convincing.

Progressive's and Wilshire's basic opposition rests on two embellishments: that the Vinci parties based their tendered defense duty merely on boilerplate allegations of agency in the Bristman Lawsuit; and that the Vinci parties are complete strangers to the Progressive and Wilshire insurance policies.

■ Admittedly, in boilerplate fashion, the Bristman complaint alleged that Meza, Western and the Vinci parties were all principals and agents of one another. However, as we have seen, as the Bristman Lawsuit proceeded through summary judgment motions, triable evidence was presented that implicated one or more of the Vinci parties as vicariously liable for the Bristman accident under the peculiar risk doctrine. Even assuming for the sake of argument that this evidence was not presented to Progressive and Wilshire at the time the Vinci parties tendered their defense, the evidence arose during the Bristman Lawsuit in which Progressive's and Wilshire's respective insureds, Meza and Western, played the pivotal roles for which Progressive and Wilshire were defending them. The trial court in this Defense Lawsuit judicially noticed that Progressive and Wilshire had notice of plaintiff Bristman's contentions and supporting facts in the Bristman Lawsuit. While an insurer need not continuously investigate the potential for coverage after making an informed decision on coverage at the time of tender, if available information from other sources later shows otherwise, a duty to defend may then arise. (*Gunderson v. Fire Ins. Exchange, supra,* 37 Cal.App.4th at pp. 1113–1114; see *Marie Y. v. General Star Indemnity Co., supra,* 110 Cal.App.4th at p. 957; Croskey, *supra,* ¶¶ 7:519, 7:519.5, p. 7B-9.)

---

[5] *Castro* also encompassed the *direct* liability theory of limited retained control under Restatement Second of Torts, section 414. There is no incompatibility, though, between this direct theory of limited retained control and the vicarious theory of peculiar risk. As *Castro* explained, "The peculiar risk doctrine does not depend upon the degree of control over the work retained by the employer; it depends upon the risk peculiar to the work contracted to be performed." (*Castro, supra,* 114 Cal.App.3d at p. 518.) In a special verdict, the *Castro* jury found liability on the peculiar risk doctrine. (*Id.* at p. 509.)

■ As for the notion of complete strangers, the omnibus clauses at issue cover *vicarious* insureds. One or more of the Vinci parties has been shown to be potentially vicariously liable under the peculiar risk doctrine for Meza's and Western's conduct in the Bristman accident. As one treatise has explained, "[over] time, the provisions specifying who was insured under the [standard automobile insurance] policy were structured to encompass three broad categories of insureds: (1) the named insured (owner) of the specified auto(s), (2) permissive users, and (3) any person or organization legally responsible for the use of such automobile by the owner or permissive user [termed 'vicarious insureds']." (Malecki et al., The Additional Insured Book (2000) Commercial Auto Insurance, ch. 15, pp. 271, 275 (hereafter Malecki).) As this treatise further elucidates, "Within the category of *vicarious insureds* are persons or organizations who may be liable for the conduct of any insured in the preceding two categories [i.e., named insured and permissive user]. For example, this would provide insured status to the owner of a construction project with respect to a claim made by a third party who is injured in an accident involving a contractor's auto." (Malecki, ch. 15, p. 275.) This example aptly describes the situation before us.[6]

Following the trail of this "stranger" further, Progressive and Wilshire also assert that a vicarious insured is less of an "insured" than a named insured or a permissive user, and is liable only if it is responsible for *placing* the driver behind the wheel. Otherwise, "a form complaint with overlapping allegations concerning employment, agency, ownership and use of the vehicle will give rise to an immediate duty to defend . . . some, if not all, strangers to the use or operation of the vehicle."

We do not see it this way. The language of the insurance policies does not differentiate between those considered "insureds." Within their respective

---

[6] The applicable California insurance statute on vicarious insureds, Insurance Code section 11580.1, subdivision (b)(4), deleted in 1993 the vicarious-based language "legally responsible for the use of." (Stats. 1993, ch. 408, § 1, pp. 2262–2263.) Neither the legislative history nor the parties shed light on this deletion. The Progressive and Wilshire insurance policies, as noted, contain the standard vicarious insured language, or its equivalent, of "[a]nyone liable for the conduct of an 'insured' described above [i.e., the named insured or permissive user] but only to the extent of that liability." (Malecki, *supra*, ch. 15, p. 277, exhibit 15.3.)

Furthermore, we must acknowledge another treatise that states generally that "[o]ne is not 'legally responsible' for the operation of another vehicle where one hires the owner of the vehicle to perform certain tasks, and the owner of the vehicle operates it in a manner causing injury while performing such tasks." (8 Couch on Insurance (3d ed. 1997) § 111:48, p. 111-79.) However, this same treatise goes on to note that this principle does not apply, for example, to a general contractor who has directed the driving of a subcontractor's truck in making a delivery to the construction site; in that situation, the general contractor may be deemed within the omnibus clause of the subcontractor's truck liability policy for injuries sustained by a third person while the truck was being so used. (*Id.*, § 111:54, p. 111-87.)

realms, a vicarious insured is as much an "insured" as a named insured or a permissive insured. As the Croskey treatise has observed, "The insurer's duty to defend the 'insured' includes both the named insured(s) and anyone else included in the policy's definition of 'insured.' " (Croskey, *supra*, ¶ 7:514.5, p. 7B-7.) And the cases upon which Progressive and Wilshire rely for their behind-the-wheel placement limitation involved a negligent entrustment relationship (*City of San Buenaventura v. Allianz Ins. Co.* (1992) 9 Cal.App.4th 402 [11 Cal.Rptr.2d 742]) or an employment relationship (*Younker v. County of San Diego* (1991) 233 Cal.App.3d 1324 [285 Cal.Rptr. 319] and *Government Employees Ins. Co. v. Gibraltar Casualty Co.* (1986) 184 Cal.App.3d 163 [229 Cal.Rptr. 57]). These cases do not purport to restrict the scope of vicarious insured liability to only these venues of behind-the-wheel placement. These cases simply involved particular vicarious theories: negligent entrustment and employment. A particular vicarious liability theory is involved here as well: It is called the peculiar risk doctrine.

Continuing along the "stranger" path, Progressive and Wilshire note that the Vinci parties have not paid any premiums for those insurance policies. We note that neither do most permissive users, and no one disputes they are "insureds."

Progressive and Wilshire also point to the trial court's concern in the Defense Lawsuit that the "omnibus clause does not, and should not, insulate a landowner whose own negligence created a dangerous condition resulting in injury to a third party, by requiring a contractor who does nothing other than follow the landowner's plan to defend and indemnify the negligent landowner." We agree. In the present case, though, we have imposed the duty to defend only in the context of the landowner's (actually, here, the developer/general contractor/grading contractor's) potential vicarious liability under the peculiar risk doctrine. The landowner is still *directly* liable for its "*own* negligence," and the vicarious insurer providing a defense to the landowner may have a right to be reimbursed for defense costs allocable to claims for which there was no potential vicarious coverage under the policy. (*Buss, supra*, 16 Cal.4th at p. 50.)

Finally, the weakness of Progressive's and Wilshire's argument against a duty to defend the potential vicarious liability here is highlighted by the four cases upon which they rely most to make that argument.

In *City of San Buenaventura v. Allianz Ins. Co., supra*, 9 Cal.App.4th 402, the city unsuccessfully claimed it was a vicarious insured entitled to a defense under a negligent entrustment theory. The facts showed, however,

that the city did not negligently entrust the car to the accident-causing driver. The city had contacted the vehicle's owner, who did so. (*Id.* at pp. 404, 406.)

In *Safeco Ins. Co. of America v. Parks* (2004) 122 Cal.App.4th 779 [19 Cal.Rptr.3d 17], the person ultimately denied vicarious insured status had to have been a member of a particular household. All of the information from the household members and other interested parties indicated that this person was not such a member. (*Id.* at pp. 792–793.)

And then there is the opinion in *Chicken Delight of Cal., Inc. v. State Farm Mut. Auto. Ins. Co.* (1973) 35 Cal.App.3d 841 [111 Cal.Rptr. 79]. That opinion did posit, relying in turn on the fourth case to which Progressive and Wilshire look—*Wint v. Fidelity & Casualty Co.* (1973) 9 Cal.3d 257 [107 Cal.Rptr. 175, 507 P.2d 1383] (*Wint*)—that vicarious insured status pivots upon the reasonable expectations of the named insured. (*Chicken Delight, supra,* at pp. 859–861.) The trouble is that the *Chicken Delight* opinion upon which Progressive and Wilshire rely was but a single justice-signed concurring opinion in a Court of Appeal case, and that concurrence has not been adopted in its nearly 36 years of existence. (*Id.* at pp. 850–865.) Furthermore, the court in *Wint*, after noting that the reasonable expectations principle traditionally applies in the context of insurance policy ambiguity, concluded: "[I]t would be unreasonable for [the named insured] to have assumed that part of the premium he paid for the policy was to purchase the protection of a defense to someone claiming to be an additional insured, when such person, *because of a clear exclusionary clause in the policy*, actually had no basis for sustaining his claim of being covered thereunder." (*Wint, supra,* 9 Cal.3d at pp. 264–265, italics added.)

Although we have found that Progressive and Wilshire owed the Vinci parties a duty to defend them pursuant to potential vicarious liability under the peculiar risk doctrine, we add two closing thoughts concerning American. The first thought is that "where more than one insurer owes a duty to defend, a defense by one constitutes no excuse of the failure of any other insurer to perform." (*Wint, supra,* 9 Cal.3d at p. 263.) And the second thought, already expressed, is that Progressive and Wilshire may have a right to be reimbursed for defense costs allocable solely to claims for which there was no potential vicarious coverage under their policies. (*Buss, supra,* 16 Cal.4th at p. 50.)[7]

---

[7] In light of our resolution and the limited context of the summary judgment/adjudication motions before us, it is more appropriate for the trial court to consider the remaining issues of whether Progressive's coverage is primary to American's and whether Progressive may not allocate defense fees and costs with American under Insurance Code section 11580.9, subdivision (g).

## DISPOSITION

The judgments in favor of Progressive and Wilshire are reversed to the extent they conclude that Progressive and Wilshire had no duty to defend the Vinci parties in the Bristman Lawsuit under the potential vicarious liability theory of the peculiar risk doctrine. American is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

Scotland, P. J., and Sims, J., concurred.

A petition for a rehearing was denied January 6, 2010, and respondents' petition for review by the Supreme Court was denied March 18, 2010, S179691. George, C. J., did not participate therein.