FILED

AUG 25 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-14-1019-TaPaKi |
| | ) | |
| CRISTIE TOLOTTI, | ) | Bk. No. 9:10-bk-14856-RR |
| | ) | |
| Debtor. | ) | Adv. No. 9:11-ap-01215-RR |
| _____ | ) | |
| | ) | |
| CRISTIE TOLOTTI, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | MEMORANDUM[*] |
| | ) | |
| SEABOARD PRODUCE DISTRIBUTORS, | ) | |
| INC., | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on July 25, 2014
at Pasadena, California

Filed - August 25, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Robin Riblet, Bankruptcy Judge, Presiding

_____

Appearances:     Michael Jay Berger argued for appellant Cristie
Tolotti; Joshua S. Hopstone argued for appellee
Seaboard Produce Distributors, Inc.

_____

Before:   TAYLOR, PAPPAS, and KIRSCHER, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Debtor Christie Tolotti appeals from a summary judgment in favor of Seaboard Produce Distributors, Inc. based on issue preclusion. The bankruptcy court held that a state court judgment, issued on default, conclusively established all the elements necessary to except Seaboard's claim from discharge under 11 U.S.C. § 523(a)(6).[1]

We agree that Seaboard is entitled to issue preclusive effect of the state court's findings that Mrs. Tolotti committed wrongful acts that resulted in more than $600,000 in damage to Seaboard's property. Thus, the bankruptcy court did not err when it ruled that Seaboard is entitled to rely upon the state court judgment on these elements of its § 523(a)(6) claim.

We determine, however, that Seaboard was not entitled to rely upon the state court's apparent determination that Mrs. Tolotti had the subjective state of mind necessary to except the debt from discharge under § 523(a)(6). For issue preclusion analysis, any reasonable doubt as to what was decided by a prior judgment should be resolved against allowing issue preclusive effect; and nondischargeability actions are to be strictly construed in the debtor's favor. Here, Mrs. Tolotti had inadequate notice that Seaboard sought determination of her § 523(a)(6) subjective state of mind in the state court action. Seaboard did not raise Mrs. Tolotti's subjective state of mind as a material fact to be litigated, nor did its prayer for relief for damages for waste and conversion so implicate. Further, the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

- 2 -

state court did not need to consider or determine Mrs. Tolotti's subjective state of mind for purposes of determining her liability for waste and conversion. And finally, Seaboard failed to provide any record of the default prove-up to show how or why the state court otherwise might have reached the state of mind determination on default. As a result, Seaboard failed to carry its burden to show that the state court's § 523(a)(6) state of mind findings were actually litigated and, thus, they are not entitled to preclusive effect. Therefore, we VACATE the bankruptcy court's summary judgment and REMAND this matter for further proceedings.

**FACTS**

Seaboard, the successful bidder at a bank's foreclosure sale, purchased property owned by Mrs. Tolotti and her husband in Camarillo, California, consisting of a residence and approximately nine acres of avocado trees. To obtain possession, Seaboard filed an unlawful detainer action against the Tolottis, which the Tolottis actively defended.

After conducting a trial, the unlawful detainer court awarded possession to Seaboard, along with holdover damages, and ordered the Tolottis to vacate the property. The Tolottis, nonetheless, continued their efforts to avoid eviction through post-trial legal maneuvers. At some point after foreclosure, Seaboard offered to pay for and to ensure watering, maintenance, and upkeep of the avocado trees. The Tolottis either refused or failed to respond to the offer. Mrs. Tolotti then filed

- 3 -

a petition under chapter 11.[2]

Seaboard promptly obtained relief from stay and completed the eviction process. When Seaboard took possession, the avocado trees were damaged from neglect and lack of water. In addition, the Tolottis had removed or damaged fixtures, including toilets, sinks, kitchen appliances, portions of the HVAC system, ducts, and the outside barbeque.

Mrs. Tolotti's chapter 11 case was converted to a case under chapter 7, and Seaboard filed its adversary proceeding under § 523(a)(6). Seaboard's complaint ("Adversary Complaint") sought a nondischargeable judgment for damages caused by waste, destruction and removal of fixtures from the residence, and waste, destruction and damage to the avocado orchard.

After Mrs. Tolotti responded to the Adversary Complaint, she and Seaboard entered into a stipulation. Pursuant to the stipulation, the bankruptcy court lifted the automatic stay to allow Seaboard to file and prosecute an action against Mrs. Tolotti in state court relating to the claims raised in the Adversary Complaint.

Seaboard filed its complaint for waste and conversion against Mrs. Tolotti and her husband in Ventura Superior Court ("State Court Complaint"). As its first cause of action, titled "Waste, Damage, and Destruction," Seaboard alleged that the Tolottis improperly delayed turnover of the property. It listed the litigation steps taken by the Tolottis in and connected to

---

[2] Mrs. Tolotti initially filed a chapter 13 petition that she subsequently dismissed; and her husband filed a separate chapter 13 petition, which was subsequently dismissed.

the unlawful detainer proceeding and the multiple bankruptcy filings. Seaboard also alleged that the Tolottis knowingly destroyed and damaged the property and recklessly failed to maintain and care for it. Further, Seaboard alleged that these "actions caused [Seaboard] to suffer financial injury without cause or excuse . . .; were deliberate and intentional . . .;" and the "willful and malicious actions" caused damages of not less than $250,000. Request for Judicial Notice, Ex. A at ¶¶ 16-17 (Adv. Pro. ECF No. 40).

In Seaboard's second cause of action, for conversion, it alleged that the Tolottis knew that Seaboard owned the property and had right to its possession, yet "willfully and intentionally took unreasonable and unsuccessful steps that obstructed and thwarted" such rights. Id. at ¶¶ 19-20. In addition, Seaboard alleged that the Tolottis "knowingly stole fixtures belonging to [Seaboard]." Id. at ¶ 21.

Seaboard titled its third cause of action as one for "Waste, Destruction, and Damage to Avocado Orchard." Seaboard alleged that the Tolottis damaged the avocado trees through neglect and lack of watering, and that such lack of care was willful and intentional. Id. at ¶¶ 23-24. It specifically alleged that "[the Tolottis'] actions, were deliberate and intentional" (id. at ¶ 25); they "intentionally and recklessly failed to perform adequate maintenance to preserve" the trees (id. at ¶ 26); and their "willful and malicious actions" (id. at ¶ 27) caused Seaboard damages of not less than $300,000.

Approximately fifteen months later, Seaboard moved for and obtained terminating sanctions against the Tolottis in the state

court action based on discovery abuses and failure to obey court orders. The state court vacated trial and entered an order striking the answer and entering default against the Tolottis in favor of Seaboard. Thereafter, the state court entered a default judgment against the Tolottis for a total of $660,511.85 (hereinafter, the "Default Judgment").[3]

The Default Judgment, prepared by Seaboard's counsel, substantially mirrored the State Court Complaint, with findings that the Tolottis committed the actions alleged therein. In addition, it contained detailed findings describing the physical damage to the residence and the avocado trees caused by such actions and omissions. It also included the following express findings:

> 7.  The Court finds that [the Tolottis] committed each of the acts referenced in this Judgment and caused the damage referenced in this Judgment without justification, just cause, or excuse. In taking the above actions, the Court finds that [the Tolottis] acted deliberately, willfully, and intended to cause injury to [Seaboard's] security and impede [Seaboard] from obtaining physical possession of the property.
>
> 8.  The Court finds that [the Tolottis] acted with malice in taking the above actions and that the [the Tolottis'] actions described herein caused [Seaboard] to suffer and incur damages of $300,000, for the destruction caused to the avocados, and $250,000 for the damage caused to the Property due to removal of the fixtures, plus interest of $105,327.12 and costs of $5,184.73 for a total judgment of $660,511.85 together with interest on the judgment as provided by law.

Request for Judicial Notice, Ex. D (Adv. Pro. ECF No. 40). No

---

[3]  The Default Judgment appears to have been entered based on a default prove-up conducted by the state court without a hearing. The record on appeal, however, does not contain copies of any documents or evidence considered by the state court for the default prove-up. Therefore, our review is limited to the State Court Complaint and the Default Judgment.

appeal was filed.

Seaboard thereafter filed a motion for summary judgment (hereinafter, "MSJ") requesting that the bankruptcy court give preclusive effect to the Default Judgment. Mrs. Tolotti opposed the MSJ on the grounds that Mrs. Tolotti's state of mind, as required to establish nondischargeability under § 523(a)(6), was not decided by the state court, thus creating a disputed issue of fact that could not be determined by the bankruptcy court on summary judgment.[4] Mrs. Tolotti also argued that the issue of dischargeability was not litigated in the state court and could only be determined in the bankruptcy court.

The bankruptcy court held a hearing on the MSJ and stated its findings and conclusions on the record. The bankruptcy court found that the Default Judgment was entitled to preclusive effect and that the findings contained therein conclusively established nondischargeability of the judgment amount under § 523(a)(6). The bankruptcy court entered its order granting summary judgment and a separate judgment of nondischargeability thereon (the "Judgment"), and Mrs. Tolotti timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C.

---

[4] In her opposing papers, Mrs. Tolotti argued and stated by declaration that she removed the items from the property because she believed them to belong to her; her court filings were made to protect her rights; and she stopped watering the avocados months before foreclosure because she could not afford the bills and the trees were dying by the time Seaboard offered to reimburse her for watering. Such alleged "factual disputes are irrelevant here where the court's task is to determine whether the Default Judgment will support a summary judgment for nondischargeability in this court." Newsom v. Moore (In re Moore), 186 B.R. 962, 966 n.3 (Bankr. N.D. Cal. 1995).

§§ 1334 and 157(b)(2)(I).  We have jurisdiction under 28 U.S.C. § 158.

## ISSUE[5]

Did the bankruptcy court err when it determined that the state court's state of mind findings in the Default Judgment were entitled to issue-preclusive effect as to Seaboard's § 523(a)(6) nondischargeability claim against Mrs. Tolotti?

## STANDARD OF REVIEW

We review decisions on summary judgment de novo.  Bamonte v. City of Mesa, 598 F.3d 1217, 1220 (9th Cir. 2010).  We also review de novo whether a debt is excepted from discharge as a willful and malicious injury under § 523(a)(6).  Black v. Bonnie Springs Family Ltd. P'ship (In re Black), 487 B.R. 202, 210 (9th Cir. BAP 2013); see also Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002) (nondischargeability presents mixed issues of law and fact and is reviewed de novo).

Our review of the bankruptcy court's determination that issue preclusion was available is also de novo.  In re Black, 487 B.R. at 210.  If issue preclusion was available, we then review the bankruptcy court's application of issue preclusion for an abuse of discretion.  Id.  The bankruptcy court abused its discretion only if it applied the incorrect legal rule or its application of the correct legal rule was illogical, implausible, or without support in the record.  See United States v. Hinkson,

[5] On appeal, Mrs. Tolotti states the issue more broadly, but only one of her arguments addresses the bankruptcy court's issue preclusion determination.  Mrs. Tolotti does not dispute the finality of the Default Judgment; nor question the identity of the parties involved.  We, therefore, do not address these elements.

585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

**DISCUSSION AND ANALYSIS**

**A. Standards and burdens.**

    **1. Summary judgment**

A bankruptcy court may grant summary judgment when the pleadings and evidence demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant has the burden of proof. See N. Slope Borough v. Rogstad (In re Rogstad), 126 F.3d 1224, 1227 (9th Cir. 1997) (It is error to grant summary judgment simply because the opponent failed to oppose.).

The issue preclusive effect of a prior state court judgment may serve as the basis for granting summary judgment. See Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 832 (9th Cir. BAP 2006); see also Grogan v. Garner, 498 U.S. 279, 284 (1991) (holding that the doctrine of issue preclusion applies in bankruptcy court proceedings seeking to except debts from discharge). Federal courts must give "full faith and credit" to the judgments of state courts. 28 U.S.C. § 1738.

    **2. Issue preclusion**

The party asserting preclusion bears the burden of establishing the threshold requirements. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001). This means providing "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996). "Any reasonable

- 9 -

doubt as to what was decided by a prior judgment should be resolved against allowing the [issue preclusive] effect." Id.

In determining whether a state court judgment is entitled to preclusive effect in a bankruptcy proceeding, the bankruptcy court must apply the forum state's law of issue preclusion. In re Harmon, 250 F.3d at 1245. Since the question here involves the preclusive effect of a California state court judgment, we apply California preclusion law. See id.

Under California issue preclusion law, the proponent must establish the following:

> 1) the issue sought to be precluded . . . must be identical to that decided in the former proceeding; 2) the issue must have been actually litigated in the former proceeding; 3) it must have been necessarily decided in the former proceeding; 4) the decision in the former proceeding must be final and on the merits; and 5) the party against whom preclusion is being sought must be the same as the party to the former proceeding.

Honkanen v. Hopper (In re Honkanen), 446 B.R. 373, 382 (9th Cir. BAP 2011); Lucido v. Super. Ct., 51 Cal. 3d 335, 341 (1990).

Even if all five requirements are satisfied, however, California places an additional limitation on issue preclusion; courts may give preclusive effect to a judgment "only if application of preclusion furthers the public policies underlying the doctrine." In re Harmon, 250 F.3d at 1245 (citing Lucido, 51 Cal. 3d at 342).

**3.   Issue preclusive effect of default judgments**

Most jurisdictions do not consider a default judgment to be capable of satisfying the requirements for the application of issue preclusion. See Murray v. Alaska Airlines, Inc., 522 F.3d 920, 924 (9th Cir. 2008) (citing Restatement (Second) Judgments

- 10 -

§ 27, cmt. E). In California, however, issue preclusion may apply to a default judgment; the issue to be precluded, however, "must have been necessarily litigated in the action resulting in the default judgment." In re Harmon, 250 F.3d at 1246 n.5 (internal quotation and citation omitted).

The "'necessarily litigated' requirement imposes two separate conditions: the issue must have been 'actually litigated' and it must have been 'necessarily decided' by the default judgment." Id. The defendant must have had "actual notice of the proceedings and a 'full and fair opportunity to litigate,'" Cal-Micro, Inc. V. Cantrell (In re Cantrell), 329 F.3d 1119, 1123-24 (9th Cir. 2003) (citing In re Harmon, 250 F.3d at 1247 n.6); and the material factual issues must have been raised in the pleadings and must have been necessary to sustain the judgment. Id. at 1247.

"[A] default judgment conclusively establishes, between the parties so far as subsequent proceedings on a different cause of action are concerned, the truth of all material allegations contained in the complaint in the first action, and every fact necessary to uphold the default judgment; but such judgment is not conclusive as to any defense or issue which was not raised and is not necessary to uphold the judgment." Mitchell v. Jones, 172 Cal. App. 2d 580, 586-587 (1959). In default situations, the defendant generally has a right to depend upon the pleadings to determine whether or not to appear and litigate the matter. It is ordinarily held that it would be doing a defendant serious wrong and injustice to uphold a judgment that gives relief beyond that asked for in the complaint. Thus, "[a] default judgment

- 11 -

will have a[n issue preclusive] effect only as to material issues actually raised in the pleadings."  Heiser, California Civil Procedure § 9.03 (Matthew Bender & Co. 2nd ed. 2005) (citing English v. English, 9 Cal. 2d 358 (1937); Four Star Elec. Inc. v. Feh Constr., 7 Cal. App. 4th 1375 (1992)).

**4.    Section 523(a)(6) state of mind requirements.**

A creditor objecting to the dischargeability of its claim bears the burden of proving, by a preponderance of the evidence, that the particular debt falls within one of the exceptions to discharge enumerated in section 523(a).  Grogan v. Garner, 498 U.S. at 286-91.  Section 523(a)(6) excepts from discharge debts arising from a debtor's "willful and malicious injury" to another person or to the property of another.  Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008).  "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).  In the Ninth Circuit, "§ 523(a)6)'s willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct."  Ormsby v. First Am. Title Co. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010).  This standard is an exacting one under any circumstance.

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.  Malice may be inferred based on the nature of the wrongful act."  Id. at 1207.  The willful

- 12 -

injury must be established, however, before malice may be inferred.  See id. (citing Thiara v. Spycher Bros. (In re Thiara), 285 B.R. 420, 434 (9th Cir. BAP 2002) ("the 'done intentionally' element of a 'malicious' injury brings into play the same subjective standard of intent which focuses on . . . knowledge of harm to the creditor.")).

**B.    Mrs. Tolotti's subjective state of mind was not actually litigated in the state court action.**

Here, Seaboard appropriately argued below, and repeats on appeal, that default judgments in California are entitled to issue preclusive effect.  And Seaboard also correctly argues that the Default Judgment contains findings that would support nondischargeability under § 523(a)(6).  The state court expressly found that Mrs. Tolotti "caused the damage referenced in this Judgment without justification, just cause, or excuse."  Request for Judicial Notice, Ex. D at ¶ 7 (Adv. Pro. ECF No. 40).  It found that Mrs. Tolotti "acted deliberately, willfully, and intended to cause injury . . . ."  Id.  In addition, it found that Mrs. Tolotti "acted with malice in taking the . . . actions and . . . the actions . . . caused [Seaboard] to suffer and incur damages . . . ."  Id. at ¶ 8.  These words and phrases appear facially to satisfy the state of mind requirements.  But the problem with this view is that these words and phrases when used in the context of state court causes of action for waste and conversion do not comport with the very particular definitions in the Ninth Circuit for bankruptcy nondischargeability purposes.

Moreover, nowhere in the state court complaint did Seaboard allege that Mrs. Tolotti intended to cause injury to Seaboard, a

- 13 -

critical element of the subjective state of mind required to support a § 523(a)(6) claim. This material factual issue was neither raised by Seaboard in the State Court Complaint nor necessary to support a state court judgment based on waste and conversion.

Thus, prior to her default, Mrs. Tolotti could not know that intent to injure would be litigated in the state court action. This determination arose for the first time in the context of Default Judgment and was not a required determination for liability in connection with the state court waste and conversion claims.

### 1. Mrs. Tolotti's "intent to cause injury" was not raised in the State Court Complaint.

In the State Court Complaint, Seaboard pled that Mrs. Tolotti's actions and omissions, labeled waste and conversion, were intentional and deliberate. It also summarily alleged that such "willful and malicious actions" caused Seaboard to incur damages. Willful and intentional actions, however, are not synonymous with willful or intentional injury. See Geiger, 523 U.S. at 61; and see Dominquez v. Elias (In re Elias), 302 B.R. 900, 909 (Bankr. D. Idaho 2003) (emphasis on the importance of the debtor's subjective intent under § 523(a)(6) required denial of issue preclusive effect of a criminal judgment). As Mrs. Tolotti argues on appeal, willful, as used in state court tort actions, is not synonymous with willful under § 523(a)(6).

### 2. California "willfulness" vs. § 523(a)(6) "willfulness."

California law recognizes "willful" misconduct as a type of

- 14 -

misconduct that is more culpable than negligence but falls short of intentional wrong. New v. Consol. Rock Prods. Co., 171 Cal. App. 3d 681, 689 (1985). "Wilful or wanton misconduct is intentional wrongful conduct, done either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible result." Id. Such willful misconduct is known under several other names: "serious and wilful misconduct," "wanton misconduct," "reckless disregard," "recklessness " – an aggravated form of negligence. Id.; and see Carlsen v. Koivumaki, 227 Cal. App. 4th 879, 895 (2014). But negligence, even aggravated negligence, is insufficient to support a nondischargeable claim under § 523(a)(6). See Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1207 (9th Cir. 2001) ("[I]t must be shown not only that the debtor acted willfully, but also that the debtor inflicted the injury willfully and maliciously rather than recklessly or negligently."). Nonetheless, Seaboard incorporated in its allegations of waste and conversion such descriptors as "willful and malicious actions," "deliberate," and "intentional." Having done so, however, Seaboard did not place at issue Mrs. Tolotti's subjective state of mind. In a default situation, if a material fact was not raised in the pleadings, unless it was necessarily decided, the issue was not actually litigated. See In re Harmon, 250 F.3d at 1248.

"Whether an issue was necessarily decided has been interpreted to mean that the issue was not entirely unnecessary to the judgment in the prior proceeding." Murphy v. Murphy, 164 Cal. App. 4th 376, 400 (2008) (internal quotation and

citation omitted). Here, Seaboard was not required to prove Mrs. Tolotti's subjective intent to injure in order to prove her liability for waste or conversion.

### 3. Section 523(a)(6) willfulness was not necessary for Seaboard's judgment for waste.

In California, waste is an unlawful act or omission of duty by a person in possession of real property that results in an injury to that property. S. Pac. Land Co. v. Kiggins, 110 Cal. App. 56, 60-61 (1930). "Proof of conduct which has resulted in substantial depreciation of the market value of the land establishes waste." Smith v. Cap Concrete Inc., 133 Cal. App. 3d 769, 776 (1982). Thus, liability based on this property tort does not require a showing of a subjective motive to injure.

### 4. Section 523(a)(6) willfulness was not necessary for Seaboard's judgment for conversion.

Conversion is "the wrongful exercise of dominion over another's personal property in denial of or inconsistent with his rights in the property." In re Emery, 317 F.3d 1064, 1069 (9th Cir. 2003). To succeed on a claim of conversion, the plaintiff must show: (1) a present right to possess the property, (2) the defendant's conversion by a wrongful act or disposition of property, and (3) damages. Hernandez v. Lopez, 180 Cal. App. 4th 932, 939-40 (2009). A cause of action for conversion does not require a showing that the "defendant did the act in question from wrongful motives, or generally speaking, even intentionally." Henderson v. Sec. Nat'l Bank, 72 Cal. App. 3d 764, 771 (1977). In fact, "a want of such motives, or of intention, is no defense." Id.

- 16 -

Thus, the finding that Mrs. Tolotti intended to cause injury to Seaboard,[6] was unnecessary and immaterial to establish Seaboard's right to recover its claimed damages.[7]  As such, Mrs. Tolotti's § 523(a)(6) subjective state of mind was not necessarily decided by the state court.[8]

**5.  Seaboard did not seek or obtain punitive damages.**

Arguably, if Seaboard sought and obtained a ruling in the state court awarding punitive damages against Mrs. Tolotti, the findings necessary to support such damages might be sufficient to satisfy the state of mind requirement under § 523(a)()6).  See In re Jercich, 238 F.3d at 1209 (a finding of substantial oppression under Cal. Civ. Code § 3294, for punitive damages, held to be sufficient to show malicious injury under § 523(a)(6)).  Seaboard did not pray for punitive damages, however, in its State Court Complaint; thus, no related findings were necessary to support the decision.

---

[6] We reiterate that the record on appeal fails to establish that the state court had anything more than the State Court Complaint on which to base its decision.

[7] In oral argument, Seaboard's counsel argued that the state court read between the lines to find Mrs. Tolotti's intent to injure.  The record here does not support Seaboard's contention that the state court consciously and appropriately made such inferences unless we also read between the lines. Issue preclusion analysis does not permit us to do so. Mrs. Tolotti's counsel conceded that Mrs. Tolotti's conduct might appear "outrageous" but that in Mrs. Tolotti's mind she was legitimately entitled to do as she had done.  Seaboard had the burden, and on this point, failed to carry it.

[8] Seaboard's recitation of the elements required for issue preclusion in California omitted the word "necessarily" in the third factor: "necessarily decided."  And on appeal Seaboard does no more than state that all the issues were decided.

### 6. A § 523(a)(6) "malice" finding necessarily requires intentional injury.

As discussed earlier, Mrs. Tolotti's intent to cause injury was not actually litigated. Even assuming the state court based its "malice" finding on inferences from Mrs. Tolotti's actions, without having appropriately first determined the "intentional injury," such an inference was premature, at best. And because the application of issue preclusion as to the intentional injury finding was not appropriate, we determine that application of issue preclusion to the finding of malice is likewise not appropriate.[9]

### 7. Public policy considerations

Seaboard argues that the bankruptcy court held that public policy considerations favored application of issue preclusion. We determine that policy considerations favor application of issue preclusion to the findings regarding Mrs. Tolotti's actions and the damages caused thereby. To give preclusive effect to the facial § 523(a)(6) state of mind findings included in the Default Judgment, however, is inconsistent with fairness and public policy. The State Court Complaint failed to provide notice to Mrs. Tolotti that her § 523(a)(6) state of mind would be

---

[9] As to the "malice" finding by the state court, Mrs. Tolotti argues on appeal that the state court erred in relying on allegations that she employed improper litigation tactics to prevent Seaboard's possession of the property – because she had a legal right to litigate. Thus, Mrs. Tolotti argues, the bankruptcy court erred by giving the malice finding preclusive effect. Mrs. Tolotti asks the bankruptcy court and this Panel to sit as reviewing courts with respect to the Default Judgment - in effect a de facto appeal of a state court decision that is barred by the Rooker-Feldman doctrine. See Exxon Mobil Corp. v. Saudi Basic Indust. Corp., 544 U.S. 280, 284 (2005). We appropriately decline to do so.

- 18 -

presented to the state court for decision. Her failure to defend against that material factual issue, thus, cannot appropriately be considered an admission of its truth.[10] The fact that the state court action involved terminating sanctions does not change this conclusion. The resulting Default Judgment was broader than the State Court Complaint and arguably conflated tortious conduct with the "intent to injure" necessary to support nondischargeability under § 523(a)(6). Here, the ultimate determination of Mrs. Tolotti's § 523(a)(6) state of mind must remain a finding to be made by the bankruptcy court.[11] We reiterate that only Mrs. Tolotti's state of mind remains to be determined.

## CONCLUSION

Based on the foregoing, we VACATE the bankruptcy court's summary judgment and REMAND this matter for further proceedings.

---

[10] Seaboard argued that Mrs. Tolotti admitted willful and malicious injury when she did not dispute Seaboard's statement of undisputed facts and conclusions of law filed in support of the MSJ. We agree with Mrs. Tolotti's assertion, however, that Mrs. Tolotti only agreed that such findings were contained in the Default Judgment. She did not agree that the findings themselves were undisputed.

[11] Mrs. Tolotti also contends that the bankruptcy court improperly weighed evidence by disregarding Mrs. Tolotti's declaration in opposition to the MSJ to the effect that she did not intend to harm Seaboard. Mrs. Tolotti does not cite to any point in the record to support the contention that the bankruptcy court weighed the evidence, and, as noted earlier, the contention is inconsistent facially with the bankruptcy court's analysis and ruling based solely on its application of issue preclusion to the Default Judgment.